## BONDHOLDERS SECURITIES CORPORATION v. AYLING.

### No. 3525.

District Court, D. Connecticut.

March 17, 1938.

Buckley, Creedon & Danaher and Thomas F. Gallivan, Jr., all of Hartford, Conn., for plaintiff.

Charles V. James, of Norwich, Conn., for defendant.

THOMAS, District Judge.

This suit is predicated upon a note which reads as follows:

Lots 16 and 17, Block 110, Central Miami, Part 6

"No. ———— $4875.00

"Miami, Florida 7/27/25

"In 35 payments of $135.40 each and one payment after date, of $136.00 monthly for value received I promise to pay to the order of Edward E. Dammers Realty Corporation four thousand eight hundred seventy-five & 00/100 Dollars at Office of Edward E. Dammers Realty Corporation, 17 East Flagler Street, Miami, Florida, with interest thereon at the rate of seven per cent. per annum from date until fully paid. Interest payable semi-annually. The maker and endorser of this note further agree to waive demand, notice of non-payment and protest; and in case suit shall be brought for the collection hereof, or the same has to be collected upon demand of an attorney, to pay reasonable attorney's fees for making such collection. Deferred interest payments to bear interest from maturity at eight per cent. per annum semi-annually. Upon default of any installment of this note the entire amount shall become due and payable.

"City Hall, Norwich, Connecticut
"Nelson J. Ayling [Seal]"

The back of the note bears the following indorsements:

"PAYMENTS

| Date 1925 | Interest | Paid to | Principal | Rec'd by Bal. |
|---|---|---|---|---|
| 9/1 | | | 136.00 | |
| 9/29 | | | 135.40 | 4603.60 |
| 10 | | | 135.40 | 4468.20 |
| Jan. 1926 | | | 270.80 | 4197.40 |

"Edward E. Dammers Realty Corporation.
"By Edward E. Dammers
"President."

The Bondholders Securities Corporation, plaintiff, is a corporation organized and existing under the laws of Louisiana, and having its office and principal place of business in New Orleans, while the defendant is a resident of the city of Norwich in the State of Connecticut. The amount in demand and the residence of the parties support the jurisdiction of this court.

The plaintiff's case was submitted on depositions which were read into the record. The defendant was then called as a witness in his own behalf and testified to the negotiations which led up to the signing of the note in suit as well as to subsequent events connected with the transaction.

The execution and delivery of the note in suit is admitted by the defendant. The parties are at issue on the plaintiff's claim that it is a holder in due course as against defendant's defense of fraud, which, if sustained, would serve to defeat collection on the note by the original holder thereof. At the end of the trial, counsel for plaintiff and defendant agreed that the case should be withdrawn from further consideration by the jury and the issues decided by the court.

I make the following findings of fact: On or about the 27th day of July, 1925, an agent of the Edward E. Dammers Realty Corporation, hereinafter referred to as the

Dammers Corporation, called on the defendant in his office at Norwich, Connecticut, for the purpose of negotiating a sale of certain unimproved lots in Florida. Such agent represented to the defendant that the property in question was in Central Miami and within the city limits of the city of Miami; that macadamized streets, walks, canals, and lagoons had been completely constructed in, through, and adjacent to the tract of land of which these lots were a part. Such agent also exhibited to the defendant maps and plans showing the location of these alleged streets and sidewalks. I further find as a fact that the defendant believed these representations and relied upon them in signing and delivering the note in suit as well as the contract for deed dated the same day as the note and signed by the defendant cotemporaneously with the note, and that the defendant had no personal knowledge concerning the facts thus represented nor of the subject matter of these representations, and this the agent well knew, and that the representations thus made by the agent of the Dammers Corporation were material representations and were the inducing cause for the defendant to sign the note and enter into the contract marked Plaintiff's Exhibit K. By this contract for deed, the defendant agreed to purchase lots 16 and 17, block 110, part 6 of Central Miami for the sum of $6,500, and he further agreed to pay, and did pay, $1,265 the day the note was signed and the contract for deed executed.

I further find that the representations made to the defendant induced him to enter into the contract and to deliver the note which constituted part payment of the purchase price thereunder; that these representations were false, and were known by the person making them to be false; that they were made with the intent to induce the defendant to execute the contract, pay the cash consideration, and deliver the note in suit.

I also find that the property was not located within the city limits of Miami; that it was in a township called Central Miami, which is located west of Coral Gables, which is southwesterly of Miami, and that Central Miami is no part of Miami, but at least ten miles distant southwesterly from Miami; that the lots in question were in woods consisting of scrub oak and pine; that there were no sidewalks, and there were no streets through

and adjacent to the land of which these lots were a part at the time the representations were made on July 27, 1925.

I also find that the following installments, as indorsed on the back of the note, were paid:

September 1, 1925,    $136.00
September 29, 1925,    $135.40
October, 1925,    $135.40
January, 1926,    $270.80

It further appears, and I also find, that following the last payment and in the month of February, 1926, the defendant visited the property described in the contract, and upon ascertaining the falsity of the representations made to him by the agent for the Dammers Corporation he immediately communicated his repudiation of all further liability on the note to the Dammers Corporation, and demanded the refund of the money he had paid in, and also offered to compromise his claim for 50 per cent. thereof, which offer of compromise was then and there refused.

If the payee of the note were the plaintiff in this suit, upon these findings, I would conclude that the defense as pleaded had been sustained, and would direct that judgment be entered for the defendant. The question presented here is whether this defense is available against this plaintiff.

An inspection of the reverse side of the note, introduced in evidence as Plaintiff's Exhibit A, shows only an indorsement in blank, to wit, that of the Edward E. Dammers Realty Corporation, the payee, by Edward E. Dammers, president. The note itself furnishes no clue as to how or when the present plaintiff became the owner of it.

The plaintiff introduced in evidence a deposition of one George E. Merrick, a resident of Miami, Florida. This witness testified that in 1924 and 1925 he loaned several hundred thousands of dollars to the Dammers Corporation, and that it was repaid to him partly in cash and partly by blocks of notes; that one of the notes which he received in payment of the debt was the note in suit; that he received this note on October 1, 1925, and that he had no knowledge or notice of any claim or defense thereon by the maker; and that the note so received extinguished pro tanto the liability to him from the Dammers Corporation. He then deposes that he turned this note over to the Whit-

ney Central Bank & Trust Company of New Orleans as collateral security for a loan which was made to him by that bank, pursuant to an agreement dated August 10, 1925, and a supplemental agreement dated October 27, 1925. This witness did not testify to the specific date when he made delivery of this note to the Whitney Central Bank & Trust Company, nor did he indorse the note, and the only evidence that the note ever was negotiated to him is his testimony.

The plaintiff then introduced the depositions of C. G. Rives, F. Foster Michon, and George P. Bywater. Mr. Rives testified that he was the vice president of the Whitney Central Bank & Trust Company; that the note in suit was delivered by Mr. Merrick under the supplemental pledge agreement dated October 27, 1925, as collateral security; and that the note and the contract attached thereto were sold in February, 1931, upon the foreclosure of the pledge agreement and were purchased by the present plaintiff under such foreclosure.

Mr. Michon testified that he was an assistant trust officer of the Whitney Central Bank & Trust Company; that the bank kept a record of the payments made upon the note; and that such records show that "the amounts due for regular payments for the months of August, September, October, November and December 1925 were paid." The note and contract, according to this witness, were held from October, 1925, until February, 1931.

Mr. Bywater testified that he was assistant treasurer of the plaintiff, and that the plaintiff bought in the note in suit at the foreclosure sale, and that no payments had been made thereon since the plaintiff bought the same.

The agreement of August 10, 1925, to which Merrick was a party, required him to repurchase certain securities issued by the Miami-Biltmore Hotel Corporation in the event that the latter defaulted on any of the same; and under it, Merrick assigned to the Whitney Central Bank of New Orleans the contracts and notes covering the purchase of lots located in the tract developed and owned by the Dammers Corporation. This collateral security went into the nominal keeping of a trustee named in this agreement which provided that the trustee could permit Merrick to collect the amount due on these notes but that such privilege could be withdrawn on fifteen days' written notice. As long as there was no default on the part of the hotel company or Merrick, the latter could retain such collections for himself, provided he deposited substituted notes of equal worth.

The agreement of October 27th, after referring to that of August 10th, recites that Merrick collected a great many of these notes; that he has made no report of his collections, and therefore, as further security, he assigned an additional number of notes in accordance with the schedule attached to the agreement, and in such schedule will be found a description of the note in suit.

The defendant introduced in evidence Exhibits 3, 4, 5, and 6, consisting of three letters written on the stationery of the Dammers Realty Corporation to the defendant, all three envelopes containing the letters having been postmarked in Miami, all addressed to the defendant and all signed by the Dammers Realty Corporation, by its proper officer, and all relating to the subject-matter of this suit, and a statement, Exhibit 6, from the Dammers Realty Corporation dated June 22, 1927, sent to and received by the defendant. The statement is on a printed form, headed "Edward E. Dammers Corporation," and states the account and claims an indebtedness from defendant to the Dammers Corporation of $2,731.02. These exhibits were all admitted in evidence over the objection of the plaintiff, to which ruling the plaintiff duly excepted.

The first of the letters, Exhibit 3, is dated July 1, 1927. In it the payee, the Dammers Corporation, calls attention to the default of the defendant, and says: "We now urge you to send us a remittance covering the amount past due, or if it is inconvenient to send all at this time, to forward a substantial part and 'arrange when you can send the balance."

The second letter, Exhibit 4, is dated July 20, 1927. It complains of the failure on the part of the defendant to reply to the letter of July 1st, and contains this language:

"You must realize that we cannot carry your account on our books in its present condition indefinitely. We now insist that a remittance on account be sent to us at once, etc. * * *

"We are in need of money to continue our development work, having exhausted

the amount set aside for this purpose, and are now dependent on payments coming in on contracts."

The third letter, Exhibit 5, is dated September 27, 1928, and is from the Dammers Corporation to the defendant, and by this letter the defendant learns for the first time that the Whitney Central Bank holds the note in question. The letter says: "The Whitney Central Trust and Savings Bank, who holds under a recorded assignment your contract and promissory note covering your purchase of Lots 16–17, Blk. 110, Part 6, Central Miami has brought to our attention the delinquent status of your account." In that letter the defendant is also informed that the Dammers Corporation has been instructed by the Whitney Central Bank, "to take such action as is necessary to bring about the rehabilitation of your contract without further delay."

■ The principles of law applicable to this case are comparatively simple and need the citation of no authority to support them. A note, like any other obligation, is subject to any defenses which the maker may have as against the payee. If its execution and delivery were induced by fraud, then the fraud will void the obligation of the note in the hands of the payee. A holder in due course, however, takes negotiable paper free from defenses of the maker against the payee. An assignee of a holder in due course stands in the same position. A person who acquires a note after it has matured is not a holder in due course. Therefore, the only question presented here is a question of fact. That question is: Did the Dammers Corporation deliver the note to Merrick; and, if so, when?

■ On January 28, 1926, the note was in default. By that date six installments should have been paid, and only five had been paid. By reason of the acceleration clause therein embodied the note had matured. If the Dammers Corporation delivered the note after January 28, 1926, the person acquiring it was not a holder in due course.

On this question, the direct testimony of the plaintiff's witnesses collides with the circumstantial evidence in the case. If, on October 1, 1925, the Dammers Corporation had paid its debt to Merrick by transferring the note to him, and thereafter the Dammers Corporation had no further title, interest, or equity therein, then why:

(a) Did it continue to collect the installments on the note subsequently accruing?

(b) Did it fail to notify the defendant of a change of ownership?

(c) Did it fail to make such notification when defendant repudiated all further liability in February, 1926?

(d) Did it continue for years later to send letters to the defendant in which it demanded payment of the note?

And if after October 27, 1925, the Whitney Central Bank was the holder of the note, why did neither the bank nor Merrick ever give notice of their ownership to the defendant on an obligation payable to them in installments? The record is devoid of any suggestion that serves to meet these inquiries.

Nor am I able to accept at face value the documentary record introduced on behalf of the plaintiff. Attached to the agreement of August 10, 1925, is a schedule of various notes which are recited to have been delivered by Merrick to the trustee. Nevertheless it appears by the recitals of the agreement of October 27, 1925, that a great many of these notes were in fact collected by Merrick. It is inconceivable that such collections could have been effected by Merrick, unless Merrick had physical possession of the notes, because, as a condition of receiving the last payments thereon, the notes themselves would have to be delivered to the maker. In spite of the recitals in the contract that the documents were delivered, I am impelled to the conclusion and find that they were not delivered.

It also appears that while Merrick was interrogated as to his connection with the Whitney Central Bank, the subject matter of his connection, if any with the Dammers Corporation, was sedulously avoided. We learn that Merrick advanced several hundred thousand dollars to the Dammers Corporation, and the documents indicate that a vast number of contracts and notes attached thereto, received by the Dammers Corporation on the sale of its property, were thereupon turned over by the Dammers Corporation to Merrick in payment of its loan. The inference is obvious that Merrick sustained something else besides a debtor and creditor relation to the Dammers Corporation.

■ Objection is made to the introduction of the Defendant's Exhibits 3, 4, 5, and 6 on the ground that, as to this plaintiff, they were hearsay. I concede that the problem posed by this objection is a serious one. On reflection, however, I have decided to adhere to my ruling under which they were admitted at trial.

These exhibits were not admitted as evidence of any factual statement therein embodied; for if that were so, they would operate against the defendant, and not in his favor, because they are claim letters— letters charging the defendant with liability. If, then, these exhibits are not received as proof of the facts therein alleged, it cannot be that they constitute "hearsay," whether as to the plaintiff or any one else. The probative value of these exhibits resides in their being evidence of *acts;* just as we admit a written demand of a party in evidence, not for the purpose of proving the facts · incorporated in the demand, but for the purpose of proving the *act* of demand.

■ But it is said that in the case at bar no further conclusions can be drawn from these acts of demand without proof that they were authorized either by the plaintiff or by the alleged· holder of the note, and that therefore such evidence was incompetent. That contention, I think, misses the point. The very proof of such authority would reverse the probative effect of the evidence; for, if the Dammers Corporation wrote these letters by authority from Merrick or the Whitney Central Bank, it must be that the latter were then the holders of the note; for otherwise, they would not be in a position to confer such authority. That they were written with such authority was something which was open for the plaintiff to prove, in explanation as to how they came to be written, and to neutralize the inference deducible from them that at that time neither Merrick nor the bank was in possession of the note.

It seems to me that if the defendant or any other person had taken the stand to testify that he had *seen* the note in the possession of the Dammers Corporation months after it was alleged to have been delivered to Merrick, an objection to such testimony would have been futile. I think that the acts and conduct of the Dammers Corporation in relation to the note, prior to any notification by anybody to the defendant of its alleged transfer, come within the same category as visual evidence of the Dammers Corporation's possession; not as cogent perhaps as such visual evidence, but competent nevertheless. Such evidence, when coupled with complete silence on the part of the alleged holder of the note, for a period of two or three years after the note was alleged to have gone out of the ownership of the payee, during which time no payments were received or requested by them, although they were due monthly, and with a complete absence of any explanation, opportunity whereof was afforded at the trial, becomes in my mind determinative of the issue. I find that the Dammers Corporation did not part with the title and possession of the note prior to July 20, 1927, and that any one who did acquire it was not a holder in due course.

The plaintiff has cited certain cases which would seem to hold that the declarations of the payee, made after the maturity of the note, to the effect that he still, held the note, were inadmissible against the third party to whom the note had been negotiated. But neither the facts nor the principles were the same as in the case at bar. The defendant herein, does not rely on any declarations of the Dammers Corporation. He predicates the admissibility of its *acts* in endeavoring to enforce the payment of the note to itself, at a time when, if the plaintiff's evidence is to be credited, it no longer had any right, title, or interest, legal or equitable, in the note.

I therefore conclude that the ruling at trial in admitting the exhibits and the testimony offered in evidence by the defendant and objected to by plaintiff was correct. I also conclude that the defense of fraud has been fully established and is available to the defendant against this plaintiff. The counterclaim pleaded by the defendant is not available against this plaintiff, and it is dismissed. Submit order accordingly properly consented to as to form.