ARCH LUMBER COMPANY, INC. *vs.* E. LESLIE ARCHIBALD, JR.

JULY 3, 1958.

PRESENT: Condon, C.J., Roberts, Andrews, Paolino and Powers, JJ.

POWERS, J. This is an action in assumpsit to recover a balance allegedly due for goods sold and delivered. Trial was held before a superior court justice sitting without a jury and resulted in a decision for the plaintiff in the sum of $6,910.80 plus interest and costs. The case is before us on the defendant's bill of exceptions to such decision and to certain evidentiary rulings. However, only his exception to the decision has been briefed and argued, the other exceptions having been waived.

The testimony and documentary evidence establish that defendant, who was engaged in the construction of homes, first began to purchase building supplies, including lumber, from the plaintiff corporation in the early part of 1949; that on January 3, 1950 defendant incorporated his business under the name of Archibald Homes, Inc., a Rhode Island corporation, of which he was president, treasurer and sole stockholder; and that the method of invoicing remained unchanged from that employed by plaintiff before defendant incorporated his business.

The business practice of plaintiff was to record all orders received in person or by telephone on an order card, not a permanent record, and from this card the customer's order was transferred to invoices made in quadruplicate at the time the materials were put on plaintiff's truck for delivery. The truck driver would carry with him the first two copies, the first of which would be signed by defendant or one of his employees when the materials were delivered on the job. Occasionally this first copy would not be signed for the reason that there was no one on the job to receive the supplies, but in such instances no claim is made that the goods were not delivered. The first copy was then returned to plaintiff and the second copy was left with defendant or his employees. The goods would then be priced on the

first and third copies and the latter mailed to defendant. The fourth was an extra copy generally retained in the office.

The information on the invoices, invoice number and price, together with the name of the purchaser would be posted on a ledger card in the regular course of business and at the end of each month a statement of the account with the amount due would be made up and mailed to the purchaser. The first copies of the invoices on the account between plaintiff and defendant were introduced in evidence and became plaintiff's exhibit A. These invoices with rare exceptions referred to the customer as either Les Archibald or Les Archibald, Jr., in the same manner as was the practice prior to the incorporation of defendant's business. Three of the rare exceptions noted refer to the customer as Archibald Homes, Inc. and are defendant's exhibits 4 and 5.

Notwithstanding the long history of dealings between the parties, the present suit is based on purchases made in 1956 and are represented by plaintiff's exhibits A and B, the latter consisting of credits to defendant's account for merchandise returned. At the end of 1955 plaintiff turned over to International Business Machines Corporation, hereinafter called IBM, the posting of the ledger sheets and preparation of the monthly statements. This service was terminated April 30, 1956 at which time plaintiff resumed its former practice. The defendant's practice prior to such service and for the months of May and June 1956 was to post debits and credits on ledger cards from information furnished by invoices and credits as shown by plaintiff's exhibits A and B. Six of these ledger cards, reflecting transactions between the parties from July 1951 through September 1956, except during the period when IBM did the posting, were introduced in evidence as defendant's exhibit 9 and a part of plaintiff's exhibit C. The ledger sheets cov-

ing the IBM service for the first four months of 1956 were introduced in evidence as plaintiff's exhibits E and F.

The six ledger cards, defendant's exhibit 9, show the account as Archibald Homes, Inc. on three cards, as Archibald Homes, Inc. and/or Les Archibald, Jr. on another card, and as Les Archibald, Jr. on the remaining two cards. The IBM sheets, plaintiff's exhibits E and F, are made up item by item from the vouchers and have no general heading.

The monthly statements forwarded to defendant by plaintiff for the year 1956, the period covering the litigation, show that they are in account with Archibald Homes, Inc., and none, including the statements prepared by IBM, carries the name of defendant individually. They are part of the record as defendant's exhibits 1, 2, 3, 6 and 7.

The defendant further introduced as exhibit 17 a total of fifteen statements from plaintiff to defendant's corporation which were representative of dealings from July 1951 to July 1956. They were mailed to Archibald Homes, Inc. at defendant's home, which was also the principal place of business of the corporation.

The defendant placed in evidence three notes, two of which were dated November 9, 1955 and one was dated February 21, 1956, made payable to plaintiff and signed by E. Leslie Archibald, Jr. as president of Archibald Homes, Inc. They bear no personal endorsement of defendant and are defendant's exhibit 8. These three notes were paid by defendant when they became due at the Rhode Island Hospital Trust Company where they had been discounted.

The plaintiff introduced in evidence a note dated February 21, 1956 in the amount of $1,100 payable to plaintiff and signed by E. Leslie Archibald, Jr. as president of Archibald Homes, Inc., which note, plaintiff's exhibit H, was not paid when due in April 1956 and was duly protested by the bank.

Two months after this note was defaulted the plaintiff accepted in payment of the balance then due three notes

dated June 25, 1956 payable in thirty, sixty and ninety-one days respectively. They were payable to plaintiff and were signed by E. Leslie Archibald, Jr., as president of Archibald Homes, Inc. They are defendant's exhibits 10, 11 and 12.

Five days after the first of these notes were protested plaintiff brought the instant suit on the account against defendant individually. In November 1956 plaintiff by its president brought an involuntary petition in bankruptcy against defendant's corporation, defendant's exhibit 15, in which petition plaintiff by its president took oath that Archibald Homes, Inc. was indebted to it in the sum of $7,042.41.

The record is replete with conflicting testimony on the question of whether plaintiff contracted with defendant in his individual capacity or with the corporation of which defendant was president, treasurer and sole stockholder. George Bressler, who first worked for plaintiff from May 1949 to May 1951 as bookkeeper and from that date until four weeks before the case was heard in the superior court as credit manager and office manager, testified that defendant offered to give plaintiff a second mortgage on his home, but defendant testified that as president of the corporation he offered to give plaintiff a mortgage on the corporation's property. The defendant testified that upon resuming business with plaintiff after the incorporation of Archibald Homes, Inc. he advised Archie Dworman, secretary of the plaintiff corporation, that he wanted the account opened in the name of his corporation. Dworman on the other hand flatly contradicted this testimony.

The testimony further shows that during the four months of plaintiff's arrangement for accounting service by IBM the monthly statements were made up from information supplied by the invoices and credits, yet only a few of these contain the name Archibald Homes, Inc. Plaintiff's exhibits A and B and defendant's exhibits 4 and 5. Bressler testified that IBM received all of its information from his

office and further that "* * * in my experience the account was a struggle." Nowhere in the record is there any evidence that defendant made any payments in his individual capacity.

The trial justice in reaching his decision said: "I find as a matter of fact that the account in the amount of $6910.80 sued on by the plaintiff is due from this defendant to the plaintiff; that the contract was made between them and the plaintiff relied on this defendant's credit and that he in fact by accepting invoices and in some cases signing them, tendered his credit as security in payment of the debt. The fact that there is some discrepancy in the ledger cards—there is no question about it—but the discrepancy doesn't rule out the obligation of the defendant. The card shows Les Archibald, Jr. or Archibald Homes, Inc. It doesn't rule him out. At this time except for the problem of payment, the plaintiff ought to have decision in the amount of $6910.00 plus interest and costs."

It is clear that in the judgment of the trial justice plaintiff proved by a fair preponderance of the evidence that its contract was with defendant and that it looked to him for payment and not to his corporation. The law is well established in this state that the findings of fact by a trial justice sitting without a jury will not be disturbed unless he has overlooked important evidence or misconceived the evidence and is clearly wrong. *Moschetti* v. *De Cubellis,* 66 R. I. 463; *Lundell* v. *Lamoriello,* 75 R. I. 470; *Shuster* v. *Sion,* 86 R. I. 431, 136 A.2d 611.

It is elementary, however, that the burden is on plaintiff to prove his case by a fair preponderance of the evidence. In the case at bar the testimony of the parties was conflicting on every material fact relating to the question of whether or not it was defendant E. Leslie Archibald, Jr. upon whom plaintiff relied for payment or Archibald Homes, Inc. of which defendant was president, treasurer and sole stockholder. The trial justice was entitled to be-

lieve the witnesses for plaintiff and to disbelieve defendant's witnesses and on the state of the record as it relates to oral testimony it could not be said that he was clearly wrong. We are of the opinion, however, that he overlooked documentary evidence which it seems clear to us preponderates against the testimony of plaintiff's witnesses.

This suit is for an account running in 1956. There was testimony that IBM was employed by plaintiff from January 1 to April 30, 1956, and all statements in evidence which were prepared by it were "In Account With Archibald Homes Inc." According to plaintiff's testimony, this information was supplied by Bressler, its credit manager and principal witness. The other statements prepared by plaintiff also read: "Archibald Homes, Inc." It is the uncontradicted testimony of defendant that all such monthly statements from plaintiff, beginning with the spring of 1951 when he resumed business with plaintiff after the incorporation of his company, were similarly addressed.

It is of significance that the note dated February 21, 1956 which plaintiff accepted from Archibald Homes, Inc. and which was protested for nonpayment in April 1956 should be followed by plaintiff's acceptance of three additional notes from Archibald Homes, Inc. dated June 25, 1956 in full payment of the account. The conclusion is inescapable that if plaintiff relied on defendant and not on his corporation it would not have accepted unsecured notes of the corporation in full payment two months after the default of Archibald Homes, Inc., particularly in the light of the testimony by plaintiff's credit manager that "* * * in my experience the account was a struggle." Furthermore it seems clear that plaintiff would not have petitioned Archibald Homes, Inc. into bankruptcy for the very same account on which it is attempting to maintain this suit.

We are of the opinion that the trial justice overlooked the clear import of the documentary evidence in finding

56

that plaintiff had established its claim by a fair preponderance of the evidence.

The plaintiff urges in its brief: "Even if we assume for the sake of argument that the transactions involved in the case at bar were not contracts between plaintiff and defendant, this is the type of case where the Court may pierce the corporate veil," and cites *Muirhead* v. *Fairlawn Enterprise, Inc.*, 72 R. I. 163. The circumstances of the instant case are not comparable to those in the *Muirhead* case. We are of the opinion that the doctrine is not applicable here, there being no evidence of injustice warranting disregard of Archibald Homes, Inc. as a corporate entity. See *Vennerbeck & Clase Co.* v. *Juergens Jewelry Co.*, 53 R. I. 135, 138.

The defendant's exception to the decision is sustained, and on July 14, 1958 the plaintiff may appear before this court to show cause, if any it has, why the case should not be remitted to the superior court with direction to enter judgment for the defendant.

*Letts & Quinn, A. Peter Quinn, Jr.*, for plaintiff.

*Edmund J. Kelly, James J. Corrigan*, for defendant.

