377 A.2d 237

WILLIAM ALTERIO *et al. vs.* BILTMORE CONSTRUCTION CORP. *et al.*

AUGUST 30, 1977

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

BEVILACLQUA, C.J.    This is an appeal from a judgment entered against both defendants in the amount of $3,069.88 after trial before a Superior Court justice sitting without a jury. The plaintiffs sought to recover damages for breach of a building contract on the grounds that defective materials were used and the construction was not done in a workman-like manner.

The plaintiffs, William and Adi Alterio, are owners of a residence located at 55 Naples Avenue, Warwick, Rhode Island. The defendants are the Biltmore Construction Corp., a Rhode Island corporation, and Felix Carlone, president and treasurer of the corporation.

On April 6, 1970 plaintiffs entered into a written contract with Biltmore Construction Corp. to add a family room and garage to plaintiff's residence for a price of $4,890. The contract was executed by plaintiffs and by defendant Felix Carlone as president and treasurer of the Biltmore Construction Corp. Work was commenced in the latter part of June 1970. During the construction of the additions, the parties orally agreed to enlarge a cement patio and construct a roof over the patio for an additional price of $500.00.

At trial plaintiff William Alterio testified that, with the exception of an Anderson Door and bow window selected

by plaintiffs, defendant Carlone had complete control over the selection of construction materials, and that the majority of work was performed by defendant Carlone's son and a helper. In addition, he testified that on July 20, 1970 he noticed defects in the construction and notified defendant Carlone of these defects, but they were not corrected.

Construction was completed in August 1970. The plaintiffs made periodic payments to defendant Carlone from July 1970 through February 21, 1977, at which time plaintiffs refused to pay the $820 balance due because the defects were not rectified.

In October of 1971, at plaintiffs' request, Albert DiDonato, a Providence contractor, inspected plaintiffs' residence and submitted an estimate of repairs in the amount of $3,889.88. At trial DiDonato was unable to specify the cost of the labor and materials for each suggested repair, but he testified, over objection, that his estimate of $3,889.88 consisted of $3,075 for labor and materials, $461.25 for overhead (15 percent), and $353.63 for profit (10 percent). He stated that at the time he drew up the estimate he calculated the cost of labor and materials for each defect, but he no longer had all of these figures. He did testify as to the cost for correction of certain, but not all, of the defects, and the figures he was able to specify totaled approximately $900 for labor and materials. Although objected to, the 1971 written estimate in the amount of $3,889.88 was admitted into evidence.

The defendants' expert witness, Frank DeFusco, a Providence contractor, testified that he had recently examined plaintiffs' residence and had observed certain defects. He testified as to the cost at the present time for repairing each defect, and the prices he quoted totaled approximately $515.

The trial justice rejected the testimony of defendants' expert because he did not find it credible. As a result, although he felt DiDonato's estimate should have been more

specific, he adopted the $3,889.88 estimate as the fair and reasonable cost of repairing the defects. From that amount he deducted the $820 withheld by plaintiffs, and awarded damages in the sum of $3,069.88 plus interest and costs against both defendants. The trial justice entered judgment against defendant Carlone as well as against Biltmore Construction Corp. because he was of the opinion that plaintiffs relied on Carlone's personal promises and assurances and that they contracted with defendants "on the basis of a long personal, not corporate, relationship." The defendants' motion for a new trial was denied, and defendants appealed.

The issues raised by the instant appeal are: (1) whether the estimate of repairs prepared by plaintiffs' expert was inadmissible and whether the amount of damages awarded was clearly wrong; and (2) whether the trial justice erred in entering judgment against Felix Carlone as an individual.

I

The defendants contend that there was no legally competent evidence to support the trial justice's award of damages. This contention necessarily involved consideration of defendants' argument that the trial justice erred in admitting into evidence the estimate of repairs prepared by plaintiffs' expert and testimony concerning this item, since the trial justice's award was based on his acceptance of this evidence.

It is settled law that a bill for repairs unsupported by testimony cannot prove itself and is therefore inadmissible to prove the existence of the alleged defects or the cost of repairing them. *Krasnoff* v. *Flynn,* 97 R.I. 129, 131, 196 A.2d 158, 160 (1963); *Rossilli* v. *Iacovelli,* 88 R.I. 456, 149 A.2d 709 (1959); *Nock* v. *Lloyd,* 32 R.I. 313, 79 A. 832 (1911). However, where an expert witness testifies as to the necessity for the repairs and the reasonableness of their cost, such evidence has been held to be admissible. *Krasnoff* v. *Flynn, supra.* In that case, the expert witness, in the course of his testimony "identified a repair bill on which were

*itemized in detail the repairs to plaintiff's car and the cost of each item,"* and this court held that under the circumstances the bill was admissible. *Id.* at 131, 196 A.2d at 159-60 (emphasis added).

In the instant case, there was no dispute over the existence of the defects and the necessity of the repairs. The disagreement was over the cost of correcting the defects. The estimate at issue consisted of a listing of defects and a total figure of $3,889.88 as the cost of correction, with no itemization of the cost of repairing each defect. Furthermore, a review of the record discloses that plaintiffs' expert was unable to itemize the costs; that is, he could not specify the cost of repairing some of the listed defects, nor could he state which portion of the total estimate was attributable to labor and which to materials except by guessing.[1] As a result, there is a discrepancy of almost $3,000 between DiDonato's written estimate of $3,889.88 and his oral testimony as to the cost of repairing particular defects which totaled approximately $900.[2]

In essence, DiDonato's estimate constituted an expert's opinion as to the total cost of correcting the defects. The issue before us is whether this opinion, unsupported by testimony as to the facts on which it was based, was competent evidence of damages, and, thus, whether it was admissible.

Unquestionably, an expert's opinion must be predicated upon facts legally sufficient to form a basis for his conclusion. *Nasco, Inc.* v. *Director of Pub. Works*, 116 R.I. 712, 360 A.2d 871 (1976); *Dickinson-Tidewater, Inc.* v. *Super-*

---

[1] And because of DiDonato's inability to recall the factual basis for his estimate, the defendants were precluded from effectively cross-examining him as to the reasonableness of the cost of correcting the defects.

[2] We recognize that approximately $815 of his estimate was for overhead and profits. Although these cost factors may not have been included in his oral testimony of the cost of repairing certain defects, nonetheless, over $2,000 in estimated cost was left unsubstantiated by his testimony.

*visor of Assessments,* 273 Md. 245, 329 A.2d 18 (1974). It follows that the facts upon which the opinion of the expert is based must be stated; otherwise, "it becomes impossible to ascertain whether the conclusion drawn from them possesses sufficient probative force; or is not mere conjecture or speculation * * * ." *Dickinson-Tidewater, Inc.* v. *Supervisor of Assessments, supra* at 253, 329 A.2d at 23-24. *See also Uhlik* v. *Kopec,* 20 Md. App. 216, 314 A.2d 732 (1974).

In *Nasco, Inc.* v. *Director of Pub. Works, supra,* this court held that the trial justice erred in accepting the estimate of plaintiff's expert as to the value of buildings in a condemnation proceeding because the expert's conclusions lacked the requisite factual basis to support them. In that case it was not clear what buildings he included in his estimate of total square footage. Moreover, when asked on cross-examination how he arrived at the figure he used for the value of the floor space, he conceded that his conclusion might be based upon his "experience." The court, relying on prior cases holding that an expert's opinion based solely on experience without detailing any specific reasons or factors was entitled to no weight, concluded that "[a]n expert may not give an opinion without describing the foundation on which his opinion rests." *Id.* at 721, 360 A.2d at 876.

*Similarly in L'Etoile* v. *Director of Pub. Works,* 89 R.I. 394, 153 A.2d 173 (1959), this court affirmed the trial justice's exclusion of an expert's opinion as to the fair market value of property which was concededly based on his experience in real estate. This court reasoned:

> "To assist him in conducting an intelligent cross-examination, respondent was entitled to know the reasons or factors on which the witness relied to support his opinion." *Id.* at 402, 153 A.2d at 178.

Finally, in *McGovern* v. *Michael,* 62 R.I. 485, 6 A.2d 709 (1939), this court held that the opinion of the plaintiff's ex-

pert as to the value of goods was too speculative to accord it any weight. Noting that the expert's opinion of market value rested on mere generalities, the court concluded that permitting him to testify as to the aggregate value of the goods was prejudicial error, because his testimony "left the vital issue of market value in the realm of conjecture and not of fact; and recovery cannot be based on conjecture." *Id.* at 491, 6 A.2d at 712.

Based on the foregoing decisions, we conclude that the estimate and the testimony concerning it were inadmissible since the inability of plaintiffs' expert to state the factual basis on which his opinion was predicated precluded effective cross-examination and caused his estimate to be too speculative to entitle it any weight,

We turn now to a consideration of defendants' contention that the amount of damages awarded was clearly wrong. It is well settled that one who sues to recover damages from an alleged breach of a construction contract has the burden of proving the reasonable value of the materials and labor in question. *Ferris v. Mann,* 99 R.I. 630, 634, 210 A.2d 121, 123 (1965). An award of damages must rest on legally competent evidence establishing the nature and extent thereof; such an award may not properly be the result of speculation or conjecture, *Fusaro v. Naccarato,* 103 R.I. 324, 325, 237 A.2d 545, 546 (1968). Since the estimate made by plaintiffs' expert was inadmissible, and his testimony, other than that concerning the estimate, established only $900 as the cost of materials and labor, the record does not support the trial justice's award. Consequently, we conclude that a new trial on the issue of damages is necessary.

## II

The defendant Carlone contends that the trial justice erred in entering judgment against him because the circumstances of the instant case neither justify disregarding Biltmore Construction Corp.'s corporate identity nor justify disregarding the general rule that an agent acting on behalf

of a disclosed principal is not personally liable for acts performed within the scope of the agent's authority. We agree.

This court has previously stated:

> "The theory of corporate entity, fundamental as it is, should be disregarded only when the facts of a particular case warrant such disregard. In cases where the corporate entity has been disregarded there has been some element which rendered it unjust and inequitable to consider the corporation attacked a separate entity. In none of these cases, without such element appearing, has the corporate entity been disregarded." *Vennerbeck & Clase Co.* v. *Juergens Jewelry Co.*, 53 R.I. 135, 138-39, 164 A. 509, 510 (1933).

In *Muirhead* v. *Fairlawn Enterprise, Inc.*, 72 R.I. 163, 172-73, 48 A.2d 414, 419 (1946), this court refused to allow the real party to hide behind a corporate identity because "[a]dherence to the principle of their separate existence would, under the circumstances, result in injustice."

A review of the record in the case before us produces no evidence that would indicate that injustice would result unless Biltmore Construction Corp.'s corporate identity was disregarded or that Carlone, by incorporating, was attempting to perpetrate a fraud. The evidence shows that defendant corporation had been operating in the same business since 1948 and that the written contract between plaintiffs and defendant corporation was signed by defendant Carlone in his capacity as president and treasurer of the corporation. Absent a showing of injustice, the corporate identity should not be disregarded. *Arch Lumber Co.* v. *Archibald*, 88 R.I. 49, 143 A.2d 679 (1958).

Moreover, the facts and circumstances of this case do not warrant holding defendant Carlone liable as an agent of the corporation. "It has long been settled that an agent acting on behalf of a disclosed principal is not personally liable to a third party for acts performed within the scope of his

authority." *Cardente* v. *Maggiacomo Ins. Agency, Inc.*, 108 R.I. 71, 73, 272 A.2d 155, 156 (1971).

The trial justice appears to have based his decision on his findings that the plaintiffs knew the defendant Carlone and that he personally promised to perform the contract. The written contract clearly shows that the plaintiffs contracted with Biltmore Construction Corp. and that the defendant Carlone signed the contract in his capacity as president and treasurer. The plaintiffs knew that they had signed a written agreement with the defendant corporation, and nothing in the record indicates that the defendant Carlone used deception or made personal promises to induce the plaintiffs to enter into the contract. The defendant Carlone merely performed his duties as an officer or employee of the corporation; he was an agent of the corporation. Therefore, we conclude that the trial justice was clearly wrong in finding that this defendant Carlone personally promised to perform the contract. To hold otherwise, on the record before us, would mean that the owners and operators of all small service corporations could be held personally liable for acts performed within the scope of their authority whenever a party alleged that the owner/operator orally promised to perform. Such a result would seriously impair the concept of limiting liability through incorporation.

The defendants' appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court for a new trial on the issue of damages.

*Robert L. Kiernan*, for plaintiffs.

*Gordon C. Mulligan*, for defendants.