RHODE ISLAND HOSPITAL TRUST
NATIONAL BANK

v.

Anthony A. ALMONTE et al.

No. 81–520–Appeal.

Supreme Court of Rhode Island.

Aug. 17, 1984.

Kenneth M. Beaver, Providence, for plaintiff.

Thomas L. McDonald, Almonte, Lisa & Pisano, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment entered in the Superior Court in favor of the plaintiff for the sum of $26,104.92 together with interest and costs. We affirm the judgment. The facts of the case as set forth in the decision of the trial justice are as follows.

On January 23, 1974, an account was opened at the Rhode Island Hospital Trust National Bank (the bank) by an unknown woman in the name of Federal Ice Cream, Inc. At that time Anthony A. Almonte (Almonte) was the sole stockholder of said corporation. On the same date Almonte deposited in said account a United States Treasury check that was payable to Federal Dairy Co., Inc. (a check to which neither Federal Ice Cream, Inc., nor Almonte was in any way entitled). The check was endorsed by Federal Ice Cream, Inc., and the bank mistakenly accepted this check with the faulty endorsement as a deposit to Federal Ice Cream, Inc.'s account.

On January 30, 1974, Federal Ice Cream, In., issued a check drawn on its account in plaintiff bank for $26,000, made payable to the order of Snow's Ice Cream, Inc. (Snow's). At the time this check was drawn, Federal Ice Cream, Inc., did not owe any moneys to Snow's. However, Almonte was the owner of a majority of the issued and outstanding capital stock of Snow's. This check was deposited to the credit of Snow's in the Old Stone Trust Company. On the same date Snow's issued a check in the same amount (which was later certified) drawn on the Old Stone Trust Company for $26,000 payable to the order of one Joseph A. DiRaimo (also a defendant in this action; however, judgment was issued only against Almonte). Almonte then endorsed the name of Joseph A. DiRaimo on the check, without the knowledge of DiRaimo and for the purpose of diverting the funds to his own use.

Thereafter, the funds represented by this check were deposited to the accounts of two other corporations, first to Chepam Corp. and then to Labrico Inc. Almonte admitted, pursuant to requests for admission duly served upon him in accordance with Rule 36 of the Superior Court Rules of Civil Procedure, that these latter corporations were controlled by him through ownership of a majority of their capital stock. Almonte was unable to account for the disposition of the proceeds of these checks for any business purpose related to any of the corporate entities involved. Upon receipt of a demand from the United States Treasury Department, the bank made good the check that it had mistakenly negotiated.

In support of his appeal, Almonte raises a barrage of evidentiary objections related to the receipt of the demand of the Treasurer of the United States for payment of the original check. He further objects to admission of exhibits from the business records of the bank and lastly objects to "the piercing of the corporate veil" in impressing Almonte with individual liability for the proceeds of the original check as deposited.

■ An examination of the transcript and the replies to requests for admission discloses that many of the major allegations of the complaint were admitted before the trial began. For example, Almonte specifically admitted that a check was drawn by Federal Ice Cream, Inc., to the order of Snow's in the sum of $26,000 and that Snow's later made payable a check in the same amount to Joseph DiRaimo. At the trial Almonte testified that he signed the check with the endorsement of DiRaimo. Testimony of DiRaimo supplied the fact that this endorsement was made without his knowledge. These admissions and evidence are virtually sufficient to support the judgment even without the challenged exhibits.

■ Nevertheless, it is appropriate to state that the demand of the United States Government for repayment of the check was properly authenticated by the circumstantial evidence surrounding this transaction. See Brimbau v. Ausdale Equipment Rental Corp., 119 R.I. 14, 20, 376 A.2d 1058, 1061 (1977); McCormick's Handbook of the Law of Evidence § 222 at 548 (2d ed. Cleary 1972). The demand itself was introduced not for the proof of the matter asserted therein, but only to show that such a demand had been made. It thus constituted a verbal act and had an operative factual effect. See Bondholders Securities Corp. v. Ayling, 22 F.Supp. 847, 852 (D.Conn.1938); 6 Wigmore, Evidence § 1770 (Chadbourne rev. 1976). It is also clear from the business records evidence that the bank later forwarded its check to the United States Treasurer's office. A reading of Almonte's evasive testimony, when he was examined as an adverse witness and later on cross-examination, would amply justify the trial justice's rejection of Almonte's feeble explanations concerning what happened to the proceeds of the check and what use was made thereof.

The fact that Federal Ice Cream, Inc., went into receivership in February 1974 is

largely irrelevant since by that time the proceeds of the deposit had been diverted by the efforts of Almonte first to Snow's and then through the apparent endorsement of DiRaimo to the Almonte-owned and controlled corporations, which had no records to show the disposition of the proceeds thereafter. The trial justice was therefore completely justified in drawing the inference that Almonte had diverted these funds to his own use.

[redacted] In this case there is no legitimate issue involving the "piercing of the corporate veil." There is not a shred of evidence that any of the corporations involved benefited from these funds. The various corporate deposits constituted a thinly disguised scheme to obscure the trial of the proceeds of the original deposit. Almonte simply shifted the money from one corporate account into another and then utterly failed to show what had been done with that money. Although Almonte denied making the original deposit, the direct and circumstantial evidence on this record points unerringly toward the finding made by the trial justice that he had done so.[1] Consequently, the funds that are the subject of this action were at all times under the control of Almonte. None of the corporations that he dominated served any function with respect to these funds other than to act as a conduit in order that Almonte might utilize such proceeds as he saw fit for his own use. Thus, the trial judge's imposition of personal liability under these circumstances was entirely correct. The doctrine set forth in *Alterio v. Biltmore Construction Corp.*, 119 R.I. 307, 377 A.2d 237 (1977), which inhibited personal liability in respect to corporate officers and agents when acting on behalf of a disclosed corporate principal was simply not relevant to the facts of the case at bar. *Id.* at 315–16, 377 A.2d at 241. At no time did Almonte act as an agent for any of the corporate entities that figured in this case. He was acting solely on his own behalf. Further analysis of the evidentiary objections raised by Almonte would serve no useful purpose in the light of the admissions and undisputed facts. It is sufficient to say that such objections are wholly without merit.

For the reasons stated, Almonte's appeal is denied and dismissed. The judgment of the Superior Court is hereby affirmed. The papers in the case may be remanded to the Superior Court.

[redacted]

1. Frank R.H. Brown, who was branch manager of the Rhode Island Hospital Trust National Bank in Cranston, testified that on the morning of January 23, 1974, a woman opened a business account for Federal Ice Cream, Inc., and later that same day Anthony Almonte brought in a deposit of $29,000, which included a United States Treasury check. He further recalled that in answer to a question by Almonte he replied that normally a federal treasury check is honored right away.