DECISION
Appellant M.G.C. Remodeling and Construction, LLC ("M.G.C," or "Appellant") appeals from a decision of the Rhode Island Contractors' Registration and Licensing Board ("the Board," or "C.R.L.B.") ordering M.G.C. to pay $3000 in monetary damages to Claimant Diane DiNobile ("DiNobile," or "Claimant") and $500 in fines to the Board. Jurisdiction is pursuant to G.L. 1956 § 42-35-15. For the reasons set forth in this decision, the decision of the Board is hereby affirmed. *Page 2 
 I Facts and Travel
In February of 2007, Diane and David DiNobile decided to remodel the kitchen of their Johnston, Rhode Island home. Of some concern to the DiNobiles was the fact that the desired renovations would require procuring new wooden cabinets that matched their kitchen's existing Rutt Hand Crafted Cabinetry. Through a friend, the DiNobiles were introduced to Michael Charbatji ("Charbatji"), owner and operator of M.G.C. Remodeling and Construction, LLC. After examining the kitchen and the DiNobiles' proposed plans, Charbatji agreed that Rutt cabinetry was required in order to seamlessly match the color and quality of the new cabinets with the old. Upon further discussion, the DiNobiles hired M.G.C. to perform the desired renovations.
On March 7, 2007, M.G.C. sent Diane DiNobile an invoice which detailed the work to be performed and the amount that M.G.C. was to charge for performing the requested renovations. The invoice described the work to be performed as "New Kitchen: Including Demolition Disposal. Suppling: [sic] Anderson Sliding Door Molding. Cabinets Tile floor Installation only. Including Plumbing work under kitchen sink only." (Admin. Hr'g Ex. A.) According to the invoice, the described renovations would cost $13,600. Id That amount was to be tendered in three separate installments. Id Furthermore, the invoice listed "Rutt Hand Crafted Cabinetry" as a separate item for which M.G.C. charged an additional $5,878.01. Id All told, M.G.C. calculated that the renovations would cost the DiNobiles $19,478.01. Id
Two days later, Kitchen Interiors, a Massachusetts company that stocked Rutt cabinetry, faxed an estimate to Charbatji. (Admin. Hr'g Ex. 2.) The estimate subdivided the projected cost of the Rutt cabinets into two payments of $2939 each. Id The first *Page 3 
payment was due immediately, as a deposit, and the second payment was to be tendered upon the eventual delivery of the cabinets. Id Consequently, to cover the cost of the deposit, Charbatji requested a payment in the amount of $3000 from the DiNobiles. On March 24, 2007, the DiNobiles gave Charbatji a check for $3000 made out to "M.G.C. Remodeling." (Admin. Hr'g Ex. 1.) The phrase "For Rutt Cabinets" was inscribed on the check's memo line. Id That same day, the DiNobiles tendered a second check to M.G.C. in the amount of $4500, as payment for the first of the three agreed-upon installments for the remodeling work that M.G.C. was to perform. Id.
Shortly thereafter M.G.C. commenced demolition of the kitchen and began work on the prescribed renovations. However, work progressed slowly. During the renovation process, Mrs. DiNobile made several changes to the agreed upon plan. What was originally estimated as a four-week project soon stretched into May.
As the renovations drew to a close, it came time for Charbatji to install the new cabinets. When Charbatji proceeded with the installation, he aroused Mrs. DiNobile's suspicions because she had yet to tender the money that was due upon delivery of the Rutt cabinetry as prescribed by the initial estimate generated by Kitchen Interiors. Accordingly, Mrs. DiNobile asked Charbatji how he went about procuring the Rutt cabinetry without having received the balance of the money due from the DiNobiles. In response, Charbatji admitted that he never ordered the Rutt cabinets from Kitchen Interiors. Instead, Charbatji built replicas of the Rutt cabinetry from scratch. While the cabinets built by Charbatji had the same general appearance as the Rutt cabinets, the coloring of the wood that Charbatji had used failed to match the coloring of the kitchen's pre-existing woodwork. The DiNobiles found the discoloration unacceptable. *Page 4 
In an effort to placate the DiNobiles, Charbatji offered to have an M.G.C. painter attempt to match the color of the newly installed cabinets to the color of the pre-existing kitchen woodwork. However, upon his inspection of the job site, M.G.C.'s painter could not guarantee an exact match due to the challenges inherent in attempting to match the hue of the new wood to that of the pre-existing cabinets, which had faded in color due to the passage of time.
Because Charbatji and M.G.C. were unable to provide a satisfactory solution to the cabinet coloration issue, the DiNobiles sought outside help to rectify the situation. On June 5, 2007, the DiNobiles tendered a check in the amount of $85 to Byron Sharbetian of Artistic Restoration Wood Finishing, engaging him to provide an estimate for the amount of money it would cost to properly refinish the cabinets. (Admin. Hr'g Ex. 1.) Several weeks later, on July 8, 2007, Sharbetian submitted a proposal to Diane DiNobile to "[rjestore finish elements of kitchen cabinetry to blend and match with balance of cabinetry" at a total cost of $2470. (Admin. Hr'g Ex. 3.) Mrs. DiNobile subsequently informed Charbatji that it was going to cost nearly $2500 to address the coloration issue and asked Charbatji to cover those costs. Charbatji refused to do so. Instead, Charbatji alleged that the DiNobiles owed M.G.C. an additional $2580 for the labor associated with the efforts undertaken to refinish the cabinets that M.G.C. had installed in the DiNobiles' home. M.G.C. later submitted an invoice in that amount to the DiNobiles on August 7, 2007. (Admin. Hr'g Ex. B.)
Two weeks later, on August 21, 2007, the Rhode Island Contractors' Registration and Licensing Board received from Mrs. DiNobile a Statement of Claim in which she set forth allegations of negligent/improper work and breach of contract on the part of M.G.C. *Page 5 
On September 11, 2007, C.R.L.B. Investigator Joseph A. Lewis sent a letter to Charbatji, notifying him of Mrs. DiNobiles' claim. In a return letter dated September 18, 2007, Mr. Charbatji detailed his version of the events that had transpired over the summer. Notably, one passage of Charbatji's letter read as follows:
 [Sjince the new cabinets were not ordered, to save time and money, I took it upon myself to just make them all myself. I did not think [Mrs. DiNobile] would mind considering she would be saving money with a better cabinet made out of ¾" solid plywood not particle board. (Admin. Hr'g Ex. D at 2.)
The following day, Investigator Lewis visited the DiNobile residence in order to examine the cabinets at issue. In the report subsequently penned by Investigator Lewis, he noted that "[t]he cabinets in question were built by [the] contractor and are not a Rutt custom cabinet." (C.R.L.B. Investigative Report, Claim #6381.) In addition, the report directed the scheduling of an Administrative Hearing because the parties were unable to resolve the matter at hand. Id Accordingly, a hearing was scheduled for November 29, 2007.
The hearing was presided over by C.R.L.B. Hearing Officer Robert A. Ricci. At the hearing, claimant DiNobile and respondent Charbatji both testified and introduced a number of exhibits for Officer Ricci's consideration. At the conclusion of the hearing, based on the testimony given and the evidence in the record, Officer Ricci made a number of findings of fact. Among those findings, Officer Ricci noted that Charbatji, pursuant to a written and oral contract, had agreed to "install new cabinets floor" and "order several new cabinets." (C.R.L.B. Proposed Order at 3.) Officer Ricci further found that Charbatji had breached the contract that he had entered into with Mrs. DiNobile. Id Consequently, Officer Ricci submitted a proposed C.R.L.B. order *Page 6 
directing Charbatji to "pay to the Claimant the amount of $3000." Id at 5. Further, Officer Ricci imposed a fine of $500 pursuant to G.L. 1956 § 5-65-1 l(l)(iii). Id.
Before the proposed order was finalized, Charbatji timely filed a written exception with the C.R.L.B. Therein, Charbatji asserted that the proceedings that transpired at the November 29, 2007 hearing were improper, alleging that Hearing Officer Ricci should have recused himself from presiding over the matter because he was personally acquainted with the Claimant's husband, David DiNobile.[1] According to Charbatji, Officer Ricci's failure to recuse himself irreparably tainted the result of the hearing.
A second written exception was submitted to the Board in the form of a letter from Charbatji's counsel, Robert Ciresi. Attorney Ciresi's letter found fault with Officer Ricci's proposed order on the grounds that the monetary value of the relief granted by Officer Ricci was improper because Ricci "fail[ed] to take into consideration the extra work performed by [Charbatji] at the request of [Mrs. DiNobile]." (Written Exceptions, Claim #6381.) Pursuant to the filing of the written exceptions, notice of Charbatji's appeal was sent to all involved parties on December 31, 2007. A hearing before the full Board was subsequently scheduled for January 9, 2008.
At the Board meeting, on behalf of Mr. Charbatji, counselor Ciresi contended that the proposed order issued by Hearing Officer Ricci was improper because, in assessing damages, Officer Ricci failed to take into consideration the fact "that [Mrs. DiNobile] was not charged the full contract price." (Hr'g Tr. at 9:14-16.) Mr. Charbatji also testified before the Board, espousing his belief that Officer Ricci ruled in the DiNobiles' *Page 7 
favor because the DiNobiles "know Joe [sic] Ricci personally." Id at 14:10. Despite the concerns voiced by Ciresi and Charbatji, at the conclusion of the hearing the full Board voted to uphold the decision issued by Officer Ricci. One week later, on January 16, 2008, the C.R.L.B. mailed copies of its final order to both M.G.C. and the DiNobiles.
On February 15, 2008, M.G.C. filed a timely appeal of the full Board's decision pursuant to § 42-35-15. On appeal, M.G.C. seeks reversal of the Board's decision, asserting that the decision is unsupported by substantial evidence in the record.[2] Conversely, the Board contends that the final order in the instant matter is well supported by the evidence in the record.
 II Standard of Review
This Court's review of an administrative decision is guided by the provisions of § 42-35-15(g), which states:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency; *Page 8 
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Center for Behavioral Health, R.I.,Inc., v. Barros, 710 A2d 680, 684 (R.I. 1998) (citations omitted). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means more than a scintilla but less than a preponderance." WayneDistrib. Co. v. R.I. Comm'n for Human Rights, 673 A.2d 457, 459 (R.I. 1996) (citing Newport Shipyard Inc. v. R.I. Comm'n for HumanRights, 484 A.2d 893, 896 (R.I. 1994)). This Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Interstate Navigation Co. v. Div. of Pub. Utils. Carriers of R.I., 824 A.2d 1282, 1286 (R.I. 2003) (citations omitted). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Baker v. Dept. of Employment Training Bd. ofReview, 637 A.2d 360, 363 (quoting Milardo v. Coastal Res. Mgmt.Council, 434 A.2d 266, 272 (R.I. 1981)). *Page 9 
 III The Board's Decision
The Contractors' Registration and Licensing Board employs a dual scrutiny system in which "a hearing officer hears testimonial and documentary evidence from all affected parties . . . [then] analyzes the evidence, opinions, and concerns of which he or she has been made aware and issues a decision." Environmental Scientific Corp. v. Durfee,621 A.2d 200 (R.I. 1993). A party which is not satisfied by the hearing officer's decision may seek an in-house review of the decision by the full Board pursuant to C.R.L.B. Regulation § 4.9. Such an appeal may be based upon allegations of procedural errors, a lack of supporting evidence, or for "any other reason." (C.R.L.B. Regulation § 4.9(1).) After consideration by the full Board, the members of the Board may "affirm the proposed order and findings of fact, modify either or both, or send the case back [for] a new hearing." (C.R.L.B. Regulation § 4.9(5).)
In the instant matter, M.G.C. seeks reversal of the Hearing Officer's decision, as adopted by the Board, asserting that the decision is unsupported by substantial evidence in the record. See
section 42-35-15(g)(5). However, this Court finds there is no competent evidence in the record to contradict the determination of the Hearing Officer that Charbatji breached the contract that M.G.C. entered into with Mrs. DiNobile, in violation of § 5-65-1 l(l)(iii).
Terms describing the design or form of a structure to be built or repaired are typical provisions of residential construction or repair contracts. See generally Cause of Action for Breach of Contract for Construction or Repair of Residence, 19 COA 647 § 2. "Such terms will generally define the measurements, the configuration, and the materials to be used in completing the project. Design terms may be relatively general, or they *Page 10 
may be detailed to the most minute degree." Id Failure to conform to design terms in a construction or repair contract will ordinarily constitute a breach of that contract. See, e.g., Lockhart v.Worsham, 508 So.2d 411 (Fla.App. 1987) (installation of kitchen cabinets that measured 23 1/2 inches deep constituted breach of contract where plans called for 24 inch deep cabinets); Whiteley v O'Dell, 219 Kan. 314, 548 P.2d 798 (1976) (contractor's failure to install "t-lock" shingles as required in specifications constituted breach of contract despite fact that quality-though not appearance-of substituted shingles was comparable).
In the instant matter, when Hearing Officer Ricci made his initial findings of fact, he relied, in part, on a copy of the original invoice generated by M.G.C., which described the renovations that M.G.C. was to perform at the DiNobile residence. (Admin. Hr'g Ex. A.) That invoice specifically listed "Rutt Hand Crafted Cabinetry" as an item separate and apart from the labor to be performed. Id Officer Ricci further relied on the investigative report penned by Board Investigator Lewis, following his visit to the DiNobiles' home, wherein he noted that "[t]he cabinets in question were built by [the] contractor and are not a Rutt custom cabinet." (C.R.L.B. Investigative Report, Claim #6381.) Indeed, in his letter of September 18, 2007, Mr. Charbatji detailed his version of the events that gave rise to this dispute and conceded that he never purchased the Rutt Cabinetry at issue. (Admin. Hr'g Ex. D at 2.)
Based on the foregoing, this Court finds that there is reliable, probative, and substantial evidence in the record to support the Hearing Officer's determination, as adopted by the Board, that the Appellant breached the contract that he had entered into with Mrs. DiNobile, in violation of § 5-65-1 l(l)(iii). Because the Superior Court can *Page 11 
"reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record,"Baker, 637 A.2d at 363, this Court will not disturb the findings of the Hearing Officer, as adopted by the Board, in the instant matter.
 IV Monetary Damages and Sanctions
Appellant next argues that that the amount awarded to the Claimant is improper because the Hearing Officer, in tabulating monetary damages, failed to take into consideration extra work that M.G.C. performed subsequent to the installation of the non-conforming cabinetry. Alternatively, the Board contends that the amount awarded by the Hearing Officer was reasonable, based on the evidence received at the initial administrative hearing.
An award of damages pursuant to a breach of contract "may not properly be the result of speculation or conjecture." Alterio v. Biltmore Const.Corp., 119 R.I. 307, 314, 377 A.2d 237, 241 (R.I. 1977) (citingFusaro v. Naccarato, 103 R.I. 324, 325, 237 A.2d 545, 546 (1968)). "The burden of proof . . . is on [the claimant] to prove, by competent evidence, the amount of damages that [she] suffered because of defendant's failure to perform." National Chain Co. v. Campbell487 A.2d 132, 134-35 (R.I. 1985) (citing Smith v. Zepp, 173 Mont. 358, 370,567 P.2d 923, 930 (1977)). "[Claimants] will not be denied recovery merely because the damages . . . are difficult to ascertain, as long as they prove damages with reasonable certainty." Id
The General Assembly has conferred upon the Board the power to compensate prevailing Claimants and assess appropriate fines pursuant to § 5-65-16(f)(l), which *Page 12 
states that the Board "shall have the power and authority to . . . award monetary damages and fines provided by this chapter." Echoing this statutory grant, C.R.L.B. Regulation § 4.4(16) states that Hearing Officers, based upon the evidence received at a hearing, "may order the [contractor] to pay monetary damages to the claimant, send the contractor back to repair, or order a combination of monetary damages and repair work. . . ." The Board Regulations further state, in accordance with National Chain Co., supra, that the burden of proof is on the claimant to show that damages have, in fact, occurred; that those damages have been caused by the registrant; and the monetary value of those damages. (C.R.L.B. Regulation § 4.4(12).)
In the instant matter, the Claimant introduced several exhibits at the initial administrative hearing to prove the existence of monetary damages. Among the exhibits entered into the record was a copy of the Rutt cabinetry price estimate that the Appellant received from Kitchen Interiors, the Massachusetts company that stocked Rutt cabinetry. (Admin. Hr'g Ex. 2.) The estimate subdivided the projected cost of the Rutt cabinets into two payments of $2939 each, with the first payment due immediately, as a deposit. Id Additionally, Claimant DiNobile submitted a copy of a personal check dated March 24, 2007, made out to "M.G.C. Remodeling" in the amount of $3000. (Admin. Hr'g Ex. 1.) The phrase "For Rutt Cabinets" was inscribed on the check's memo line.Id. Nevertheless, M.G.C. never purchased the Rutt Cabinetry at issue. (Admin. Hr'g Ex. D at 2.)
Relying on this evidence, as well as the testimony that both parties provided at the initial administrative hearing, Officer Ricci found that the Claimant sufficiently proved she had sustained $3000 worth of damages as result of Appellant's breach of contract. *Page 13 
(C.R.L.B. Proposed Order at 5.) The extra work cited by Appellant as erroneously excluded from the damage calculus was performed subsequent to the installation of the non-conforming cabinetry. Further, the transcript of the full Board meeting indicates that the Board considered this work in its evaluation of Hearing Officer Ricci's decision. (Hr'g Tr. at 16:11-18.) As such, Charbatji's attempt to characterize the endeavors at issue as work improperly overlooked by both the Hearing Officer and the Board is of no merit.
Judicial scrutiny of an agency's factfinding, in the absence of a clear legislative directive to the contrary, "is limited to a search of the record to determine if there is any competent evidence upon which the agency's decision rests. If there is such evidence, the decision will stand." E. Grossman Sons, Inc. v. Rocha, 118 R.I. 276, 285-86,373 A.2d 496, 501 (R.I. 1977) (citing Prete v. Parshlev, 99 R.I. 172,176, 206 A.2d 521, 523 (1965)). Accordingly, this Court finds that the monetary damage award of $3000 assessed by Hearing Officer Ricci and adopted by the Board was not "the result of speculation or conjecture,"Alterio, 377 A.2d at 241, as the record indicates the award was supported by competent evidence offered by the Claimant. Seegenerally, Rocha v. State Public Utilities Commission, 694 A.2d 722, 726
(R.I. 1997) ("[T]he Superior Court was not permitted to decide whether the division chose the appropriate sanction but instead to determine whether the division's finding . . . was supported by any competent record evidence.").
Similarly, with respect to the $500 fine assessed by Hearing Officer Ricci, this Court finds the amount assessed to be entirely reasonable pursuant to § 5-65-10(c)(l). Section 5-65-10(c)(l) states that, "[f]or each first violation of a particular section of this *Page 14 
chapter or any rule or regulation promulgated by the board, a fine not to exceed five thousand dollars ($5000) may be imposed after a hearing by the board." Having concluded that Charbatji breached the contract that he had entered into with Mrs. DiNobile in violation of § 5-65-1
l(l)(iii), the Hearing Officer's assessment of a $500 fine was not in excess of his statutory authority or an abuse of discretion given the wide range of monetary fines available under § 5-65-10(c)(l).
 V Conclusion
After a review of the entire record, this Court finds that the Board's decision to affirm the Hearing Officer's finding that M.G.C. breached its contract with Claimant DiNobile and the Hearing Officer's subsequent award of $3000 (and the assessment of the $500 fine) were not "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." Section 42-35-15(g)(5). The final decision was neither "in excess of the statutory authority of the agency," section 42-35-15(g)(2), nor was it "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Section 42-35-15(g)(6). Substantial rights of the Appellant have not been prejudiced. Accordingly, the decision of the Board is hereby affirmed.
Counsel shall submit an appropriate order consistent with this decision.
[1] Ricci, a former North Providence City Councilman, had previously made the acquaintance of Mr. DiNobile, who had worked as a North Providence firefighter some thirteen years previously.
[2] M.G.C. also seeks reversal of the Board's decision on the grounds that that Mr. Ricci's failure to recuse himself from these proceedings constituted a conflict of interest. The asserted conflict of interest-described in footnote 1, supra — is not properly before this Court. Pursuant to G. L. 1956 § 36-14-2, the Rhode Island Ethics Commission has the authority to investigate, inter alia, any alleged conflicts of interest of employees of state and local government, boards, commissions, and agencies.