**R & B ELECTRIC CO., INC.**

v.

**AMCO CONSTRUCTION CO., INC.,
et al.**

**No. 81–364–Appeal.**

Supreme Court of Rhode Island.

Feb. 10, 1984.

Ernest Barone, Providence, for plaintiff.

Howard R. Croll, John A. Davey, Jr., Fontaine & Croll, Ltd., Woonsocket, Howard Simmons, East Providence, for defendants.

1. The parties stipulated to a dismissal with prejudice of the claim against the other person,

## OPINION

SHEA, Justice.

This is an appeal by the defendants from a Superior Court judgment in an action for unjust enrichment. The defendants are Edward J. Marteka (Marteka) and Normand H. Allaire (Allaire), partners in a real estate company known as Eagle Realty. They were also equal shareholders in Amco Construction Co., Inc. (Amco). The plaintiff is R & B Electric Co., Inc. (R & B), an electrical contracting company. We reverse.

R & B originally filed a three-count complaint in District Court against Amco, Marteka, Allaire, Eagle Realty, and another individual.[1] After trial in District Court, judgment for defendants was entered, and plaintiff appealed to the Superior Court. At trial before a justice of the Superior Court sitting without a jury, plaintiff abandoned the claims against Amco since that corporation no longer existed.

The evidence presented established that Marteka and Allaire conducted a real estate business under the partnership name, Eagle Realty; that Eagle Realty purchased a three-family house in Woonsocket with the intention of renovating it for rental to tenants; and that each partner owned an undivided one-half interest in the house. The evidence also established that Marteka and Allaire were equal owners of all the capital stock of Amco, a construction company that ceased doing business in 1975, almost two years before plaintiff filed suit in District Court. Eagle Realty, as owner, engaged Amco to be the general contractor for the renovation of the property.

In July 1973 Amco entered into its first contract with R & B to rewire the house for the sum of $1,530. A purchase order was sent to R & B signed by Mr. Michael Garrett (Garrett), an employee of Amco. There was no dispute between the parties that this contract was fully performed and

Joan E. Harrington.

that $1,530 was a fair and reasonable price for the work done.

In May 1974, during the progress of the first contract and before any payments had been made on it, Marteka, on behalf of Amco, requested that R & B submit a proposal for additional electrical work on the house. R & B submitted a proposal that subsequently was accepted to do the electrical work for $3,300, with payments to be made as follows: one-third when the rough work was completed, one-third as the work progressed further, and the balance when the work was completed. The plaintiff commenced work on this second contract. However, in July 1974, after one-third of the work had been completed, it suspended performance because it had not yet been paid for any work, including work on the first contract.

R & B then received a telegram from Amco stating that it was imperative that the work be completed; otherwise, Amco would hire another electrical contractor. In a telephone conversation, Marteka, for Amco, told Mr. Ronald H. Buratti (Buratti), the owner of R & B, that he was applying for a mortgage loan and that R & B would be paid upon completion of the work and the closing of the mortgage. R & B agreed to the change in payment terms and resumed work. Shortly thereafter, R & B received a check from Amco for $500, which it credited toward the amount owed on the first contract.

The record reflects that Eagle Realty obtained two mortgages from Marquette Credit Union to pay for the renovation of the house, one in the amount of $25,000 and a second in the amount of $4,400. The credit union retained possession of the mortgage money. It disbursed the money as requested by Amco by sending checks to the company drawn to the order of either a subcontractor or a supplier, and Amco in turn would deliver them to the named payees.

R & B completed all the work called for in the second contract but was never paid, except for the $500 that was applied to the first contract. At trial, defendants stipulated that the charges listed by R & B were fair and reasonable for the work performed on the second contract. Fearful that it would never be paid for the work, R & B initiated the filing of a mechanic's lien against the property; however, the lien was never perfected.

Part of the property was rented for a brief period. However, the credit union foreclosed on the second mortgage and later sold the property. This foreclosure sale extinguished the unperfected mechanic's lien. Thereafter, Amco ceased doing business.

At the conclusion of the trial the Superior Court justice ruled as follows: on the claim that Amco owed R & B $4,300 on account, judgment was entered for Amco; on the claim that Amco and Marteka owed R & B $3,300 for electrical services, judgment was entered for Amco and Marteka; and on the claim that Amco, Marteka, Allaire, and Eagle Realty owed R & B $4,300 for unjust enrichment, judgment was entered against Marteka and Allaire doing business as Eagle Realty but in favor of Amco and also in favor of Marteka and Allaire as individuals. It is from this judgment that defendants Marteka and Allaire appeal.

The defendants raise two issues on appeal. The first question is whether the trial justice erred in taking into account the dual status of defendants as equal shareholders in Amco and also as equal partners in Eagle Realty. The second issue is whether the trial justice erred in holding defendant property owners personally liable on a theory of unjust enrichment when the plaintiff-subcontractor had dealt only with Amco.

In rendering the bench decision, the trial justice twice mentioned that the most troubling aspect of this case was the "identity of interests" or the "close parallel" between the principals of Amco, Inc., and the equal partners of Eagle Realty, which owned the real estate. Marteka and Allaire were each 50 percent stockholders in Amco, the general contractor, and equal partners in Eagle Realty. On appeal, Marteka and Allaire contend that the trial justice was clearly

wrong in considering their dual status as a factor supporting the judgment. We agree.

■ Our discussion of this issue begins with an analysis of the general principles of corporate law. It is well settled that the corporate entity should be disregarded and treated as an association of persons only when the facts of a particular case render it unjust and inequitable to consider the subject corporation a separate entity. *Vennerbeck & Clase Co. v. Juergens Jewelry Co.*, 53 R.I. 135, 138–39, 164 A. 509, 510 (1933). This will occur when the corporate entity " 'is used to defeat public convenience, justify wrong, protect fraud, or defend crime * * *.' " *Id.* at 139, 164 A. at 510–11; *see also United Transit Co. v. Nunes*, 99 R.I. 501, 508, 209 A.2d 215, 219 (1965).

In *Muirhead v. Fairlawn Enterprise, Inc.*, 72 R.I. 163, 48 A.2d 414 (1946), all corporate dealings and finances were known only to its president and treasurer, an individual named Fisher, who acted for the corporation in all matters. It was clear from the evidence that the corporation kept no permanent records of any kind concerning its operations. It kept no books of account, nor did it have a checking account or other form of deposit in any bank. The trial justice found that there was a preconceived plan to use the corporate charter to defraud the plaintiff. On appeal, this court said:

> "Here there is such a unity of interest and ownership that the separate personalities of Fisher and the corporation no longer exist in reality. Adherence to the principle of their separate existence would, under the circumstances, result in injustice." *Id.* at 172–73, 48 A.2d at 419.

*See also Ferris v. Hawkins*, R.I., 457 A.2d 253 (1983) (defendant and his wholly owned corporation jointly and severally liable for withholding payment of stock purchase price; separate personalities held no longer to exist, injustice would result if it were held otherwise); *Contra Alterio v. Biltmore Construction Corp.*, 119 R.I. 307, 315–16, 377 A.2d 237, 241 (1977) (court refused to pierce corporate veil of wholly owned construction company when no fraud or other wrongdoing was found; plaintiffs knew they had entered into written contract with defendant corporation, nothing in record to indicate individual defendant used deception or made personal promises to induce plaintiffs); *Arch Lumber Co. v. Archibald*, 88 R.I. 49, 56, 143 A.2d 679, 683 (1958) (court declined to pierce corporate veil; "there being no evidence of injustice warranting disregard of [the defendant] as a corporate entity"). These cases are noteworthy examples of situations in which injustice and inequity do and do not warrant disregarding the corporate entity.

The case at bar differs from the above-cited cases. We are not presented with the issue of whether a corporate entity should be disregarded and the principals thereof treated as an association of persons. Rather, we are asked if there is any evidence of injustice and inequity which would warrant the trial justice's using the identity of interests between Amco and Eagle Realty as a basis for the judgment on the theory of unjust enrichment.

The record in this case supplies no evidence (and no allegation was made) of deception, fraud, or other wrongdoing in the contractual agreements between R & B and Amco or in the dealings between Eagle Realty and Amco. Nor is there any evidence to suggest that Amco was not conducted in accordance with the requirements of the law or that it was merely a sham behind which its shareholders conducted their personal affairs.

It is clear from plaintiff's testimony that neither Marteka nor Allaire personally promised to pay R & B for its services to Amco. The same is true for Eagle Realty. Furthermore, the evidence shows that Allaire was not involved in the actual operations of Amco. The corporation conducted most of its business through its employee, Garrett, and through Marteka in his capacity as an agent of the corporation.

In *Custer Builders Inc. v. Quaker Heritage, Inc.*, 41 A.D.2d 448, 344 N.Y.S.2d 606 (1973), the New York court stated, "The mere fact that the two corporations were owned and operated by the same two indi-

viduals, without more, is not sufficient to justify a disregard of corporate identities." *Id.* at 451, 344 N.Y.S.2d at 609. One of the issues in that case involved a claim of unjust enrichment by a subcontractor against a landowner wherein the landowner had the same stockholders, directors, and officers as the general contractor and wherein the landowner was not a party to the latter's contract. The court found in favor of the defendant landowner on the ground that it was not guilty of fraud or unjustly enriched.

In *Stratford Credit Corp. v. Berman,* 73 R.I. 247, 54 A.2d 404 (1947), this court stated, "The mere fact that a person holds an office in two corporations that may be dealing with each other and that have offices in the same building, without more, is not enough to make them identical in contemplation of law." *Id.* at 252, 54 A.2d at 407. This case involved an action on a promissory note wherein the defendant argued unsuccessfully that there was such an identity of interests between Stratford and another corporation as to make them one and the same party. The defendant argued that, because of such identity, the plaintiff was not a holder in due course and was therefore subject to the same defenses in the action on the note that the other corporation would have been in an action on the contract.

The mere fact that Amco and Eagle Realty were owned and operated by Marteka and Allaire, without any evidence of deception, fraud, or other wrongdoing, is not sufficient to justify a disregard of corporate identities. Therefore, we conclude that the trial justice was clearly wrong in considering the dual status of the principals of Amco and the principals of Eagle Realty as a basis for liability of the individuals.

The second issue raised in this appeal is whether the trial justice erred in holding Marteka and Allaire personally liable to R & B on a theory of unjust enrichment when R & B had dealt only with Amco.[2]

We note at the outset that actions brought upon theories of unjust enrichment and quasi-contract are essentially the same. *Paschall's, Inc. v. Dozier,* 219 Tenn. 45, 53, 407 S.W.2d 150, 154 (1966). One of the theoretical bases underlying the doctrine of quasi-contract states, "that for quasi contract neither an actual promise nor privity is necessary." Annot., 62 A.L.R.3d § 2 at 293 (1975); *see also Paschall's, Inc.,* 219 Tenn. at 54, 407 S.W.2d at 154; *Mill & Logging Supply Co. v. West Tenino Lumber Co.,* 44 Wash.2d 102, 112, 265 P.2d 807, 813 (1954); 66 Am.Jur.2d *Restitution and Implied Contracts* § 2 (1973); 17 C.J.S. *Contracts* § 6 (1963).

As a general rule of law, "*apart from unjust enrichment* * * * a subcontractor who has furnished labor or materials for the construction or repair of some form of improvement on the lands of another has no right to a personal judgment against the landowner where there is no contractual relationship between them." (Emphasis added.) Annot., 62 A.L.R.3d § 2 at 293.

The concept of quasi-contractual liability rests upon the equitable principle that one shall not be permitted to enrich himself unjustly at the expense of another or to receive property or benefits without making compensation therefor. *See Seekins v. King,* 66 R.I. 105, 110, 17 A.2d 869, 871 (1941); *Guldberg v. Greenfield,* 259 Iowa 873, 878, 146 N.W.2d 298, 301 (1966); Annot., 62 A.L.R.3d § 2 at 294.

To recover under quasi-contract for unjust enrichment, a plaintiff must prove three elements. First, a benefit must be conferred upon the defendant by the plaintiff. Second, there must be an appreciation by the defendant of such benefit.

---

**2.** The defendants argue that case law throughout the country is virtually unanimous in holding that a subcontractor cannot recover a personal judgment in quasi-contract against a property owner for work performed on that property under a contract with a third party. They cite Annot., 62 A.L.R.3d 288 (1975), as authority for this proposition. However, that citation stands for the opposite proposition.

Finally, there must be an acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without paying the value thereof. *See Bailey v. West,* 105 R.I. 61, 67, 249 A.2d 414, 417 (1969); *Paschall's, Inc.,* 219 Tenn. at 57, 407 S.W.2d at 155; Annot., 62 A.L.R.3d § 2 at 294. Simply conferring a benefit upon a landowner by a subcontractor is not sufficient to establish a claim for unjust enrichment. "The most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust." *Paschall's, Inc.,* 219 Tenn. at 57, 407 S.W.2d at 155; *See also* Annot., 62 A.L.R.3d § 2 at 294.

The trial justice framed the issue of unjust enrichment as

"[w]hether [defendants], as the individuals doing business as Eagle Realty, were the owners of the property, received any benefit, and whether or not there are unusual circumstances in this case warranting the application of the principle of unjust enrichment."

The trial justice found a benefit had been conferred upon Marteka and Allaire in that the property was upgraded to the status of rental property, that there was a tenant, and that the work done by the subcontractor contributed to the market value of this real estate at the time of the foreclosure sale. The unusual circumstances that warranted the application of the principle of unjust enrichment was the "close parallel" or "identity of interests" between the principals of Amco and the principals of Eagle Realty.

■ The dual status of defendants alone, without more, under the circumstances of this case does not justify an award for unjust enrichment. Rather, in an action like this, the court must look at the equities of each case and decide whether it would be unjust for a party to retain the benefit conferred upon it without paying the value of such benefit.

■ The materials and services furnished by R & B were delivered upon the order and credit of Amco. There is no evidence that they were sold to Marteka and Allaire, nor were they delivered upon their credit. Furthermore, Marteka and Allaire never promised to pay R & B for the materials and services furnished. On the other hand, Marteka and Allaire never paid Amco, and Amco never requested disbursement of, all monies due for the work performed by R & B. The plaintiff is now unable to seek a remedy against Amco because that corporation no longer exists.

Any benefit conferred upon Marteka and Allaire was, in our opinion, fleeting in that it was taken from them by the foreclosure and sale. Although Marteka and Allaire were able to rent the improved property to two tenants, this was only for a short period before the foreclosure. The property was purchased by the mortgagee at its foreclosure sale and subsequently was sold to a third party. It cannot therefore be said that defendants have retained any benefit conferred upon them by R & B. Since they were unable to retain the benefit, we fail to see how defendants are unjustly enriched. And if defendants were enriched by R & B, they have not been enriched under circumstances that dictate that they ought equitably to be required to compensate plaintiff.

The plaintiff bears some of the responsibility for this predicament. R & B would have been protected if it had perfected its mechanic's lien. Since the lien was not perfected, it was, unfortunately, extinguished by the foreclosure sale.

Accordingly, the defendants' appeal is sustained, the judgment entered below is reversed, and the papers of the case are remanded to the Superior Court for an entry of judgment in accordance herewith.