DECISION
Before the Court for decision is plaintiff Arnold Shorrock's (Shorrock) suit against defendant Jonathan Scott (Scott), seeking $30,000 in damages for Scott's alleged breach of contract. Shorrock asserts that on October 14, 2000, the two parties entered into an oral contract, whereby Shorrock agreed to lend Scott a sum of $16,753, and Scott agreed to repay all of his outstanding debts to Shorrock, totaling $19,454, by March 1, 2001. Shorrock now alleges that Scott failed to render his repayment by the date due, and therefore he requests that the Court grant judgment in his favor, awarding him compensatory damages and attorney's fees. Scott, in turn, argues that Shorrock's claim should be denied because he has paid his debt in full via an accord and satisfaction, in which Shorrock agreed to accept $4,000 in cash and several collectables in exchange for forgiving the debt. Furthermore, Scott argues that the doctrines of judicial estoppel and unjust enrichment prevent Shorrock from prevailing in this matter. In addition, Scott has alleged a counterclaim of fraudulent and intentional misrepresentation. The Court's jurisdiction over the breach of contract and fraud claims is pursuant to G.L. 1956 § 8-2-14. The Court's equity jurisdiction is pursuant to G.L. 1956 § 8-2-13. *Page 2 
 Facts and Travel
The parties relate two very different interpretations of the events that culminated in the instant dispute. On February 5, 2007, these onetime friends presented their respective cases to the Court in a bench trial. Three witnesses-Shorrock, Scott, and a handwriting expert called by Shorrock-testified at the trial.
The background to this case remains undisputed: Shorrock and Scott agreed that they had met sometime in 1997 or 1998 at a supper club. They became close friends over the next several years, seeing each other frequently and freely loaning money to one another. Neither party disputed that Shorrock agreed to give Scott $16,753 on October 14, 2000, and that Scott promised to repay all of his outstanding debt to Shorrock by March 1, 2001. This promise was summarized in a note which read as follows: "I, Jonathan Scott, Acknowledge [sic] that I have on this day borrowed the sum of 19,454.00 nineteen thousand four hundred fifty four to be repaid with Sovereign Bank Check number 261 to Arnold Shorrock of Foxboro Massachusetts by March 1, 2001. Signed /s/ Jonathan M. Scott."See Exhibit 1. The number 19,454 and the words "nineteen thousand four hundred fifty four" were handwritten, and the note was signed by Scott. In addition to executing this promissory note, Scott also wrote a check (number 261) in the amount of $19,454.00 payable to Arnold Shorrock on October 14, 2000. Id.
It is at this point that the parties' stories begin to differ. Scott testified that the two men met on December 15, 2000, and reached a new agreement as to the settlement of the debt: Scott would pay Shorrock $4000 in cash, as well as give him various trading cards and a magazine worth $16,000, and in return, Shorrock would destroy check *Page 3 
number 261 and consider the loan repaid. Scott stated that the magazine he gave to Shorrock was the inaugural 1953 issue of Playboy with Marilyn Monroe on the cover, and autographed by Hugh Heffner, which he valued at approximately $2000. The trading cards, some of which were autographed, featured adult film actresses and Scott estimated their total value to be approximately $14,000. Scott testified that he gave Shorrock the property in January of 2001, and, while the two parties continued to loan each other smaller sums of money over the next several months, all debts between the two men were settled by July, 2001.
Subsequently, Scott said that he received several letters from Shorrock in August, outlining his worsening financial condition and asking for money. In response to these letters, Scott said that he wrote his friend to say that he had no extra money to lend to him.See Exhibit 5. Scott explained that that summer and fall had marked a particularly tough time for him, financially and otherwise. He testified that he had been enrolled in a Masters of Business Administration (MBA) program during the preceding years, living at home during part of this time to care for his father, who suffered from Alzheimer's disease and the residuals of a stroke before subsequently dying. Scott also said that he had lost a significant sum of money in the stock market, and was having difficulty affording his daily living expenses. Furthermore, he was concerned about losing his job at Fidelity Investments, where he had returned to work in October 2000 after receiving his MBA. He explained that he did not believe he owed Shorrock any money at that time, as he had already repaid his debt in full.
Shorrock's testimony comprised a similarly desperate tale of unfortunate circumstances. He testified that he needed the money that he had lent to Scott because he *Page 4 
was going through a divorce and under a considerable financial and emotional strain in the summer of 2001. He acknowledged that Scott gave him a 1953 issue of Playboy autographed by Hugh Heffner and several binders of trading cards featuring adult film actresses, but maintains that these collectables were gifts and not made in lieu of loan payments. He valued the magazine at approximately $600. He stated that he repeatedly asked for the return of the money, but to no avail. Furthermore, he testified that Scott now owes him far more than the original $19,454 because they had agreed that the loan would be repaid at an interest rate of 18.9 percent.
He stated the summer of 2001 was a difficult one for him as well. He had left his marital home during the divorce proceedings and, being unable to afford to rent anywhere else, had moved into his small, unheated vacation cottage, where he could barely afford food. He testified that, despite exhaustive efforts, he had been unable to find a job and was spiraling deeper into debt. He had tried to resolve the matter with Scott amicably, he claimed, but he was ultimately forced to retain an attorney when Scott remained uncooperative.
The only other witness to testify at this trial was Marc J. Seifer, Ph.D., a handwriting expert called by Shorrock who analyzed several exhibits and testified, inter alia, that Scott's signature on the promissory note was genuine and that Scott was the author of a page of numbers purportedly calculating the interest Scott owed on the loan at an 18.9% rate. See Exhibits 1, 4.
During the course of the trial, Scott stated that Shorrock never mentioned the loan in the financial statements he signed as part of his divorce proceedings. Therefore, Scott now argues that the principle of judicial estoppel bars Shorrock from now claiming that *Page 5 
the loans remain outstanding. Furthermore, Scott claims that it would unjustly enrich Shorrock to allow him to collect further money from Scott when he has already been fully compensated. Additionally, Scott alleges that Shorrock has committed fraud by intentionally misrepresenting that all debts would be forgiven upon Scott's transfer of $4,000 and certain collectables to him. Scott states that he relied upon this misrepresentation when giving his money and personal property to Shorrock and, thus, he now demands a return payment for the full market value of this property.
Shorrock, in turn, argues that Scott has never rendered any payment to him in the form of cash, collectibles, or otherwise. Therefore, Shorrock contends that Scott has breached the agreement and owes him damages. In response to Scott's allegations of fraud, Shorrock claims that he never promised Scott that he would discharge the debt upon receipt of $4,000 and collectables.
 Standard of Review
This case presents a mixed question of law and equity. In all actions tried upon the facts without a jury, the trial justice "sits as trier of fact as well as law," weighing and considering the evidence, determining the credibility of witnesses, and drawing inferences from the evidence presented. Hood v. Kawkins, 478 A.2d 181, 184 (R.I. 1984). "The task of determining credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." State v. Sparks,667 A.2d 1250, 1251 (R.I. 1995) (citing Walton v. Baird, 433 A.2d 963, 964 (R.I. 1981)). The trial justice need not engage in extensive analysis when making his or her findings of fact; "even brief findings will suffice as long as they address and resolve the controlling factual and legal issues." White v. Le Clerc, 468 A.2d 289, 290 (R.I. 1983). When the Court sits in equity, it has *Page 6 
great discretion to "determine the appropriateness of, and to formulate, equitable relief," guided by "basic principles of equity and justice."Ruggieri v. East Providence, 593 A.2d 55, 57 (R.I. 1991) (quotingEast Providence v. Rhode Island Hospital Trust National Bank,505 A.2d 1143, 1145-46 (R.I. 1986)).
 Findings of Fact
As noted above, the parties present two very different accounts of the events leading up to the instant case. Therefore, in making its findings pursuant to Super. Ct. R. Civ. P. 52, the Court has to weigh the credibility of the witnesses and draw appropriate inferences. The Court now finds that the following facts have been established by a preponderance of the credible evidence:
Shorrock and Scott had been friends for several years before the genesis of this dispute, and they often loaned money back and forth to each other during the course of their friendship. On October 14, 2000, Shorrock agreed to give Scott $16,753, and Scott agreed to repay Shorrock all outstanding loans, which then totaled $19,454, by March 1, 2001. Scott wrote a promissory note to that effect, and also wrote a check payable to Shorrock in the amount of $19,454. The Court does not find that the two men agreed that the loan would be repaid with interest, as no mention of any interest rate is contained in the promissory note. The paper on which Scott purportedly calculated the amount he owed using an interest rate of 18.9% is not sufficiently clear to overcome the fact that the note contained no mention of any interest, and that the check was written for the exact amount of $19,454.See Exhibits 1, 4.
In January 2001, Scott gave Shorrock $4,000 in cash and a copy of thePlayboy magazine issued in 1953 and autographed by Hugh Heffner. He also gave Shorrock *Page 7 
several binders of trading cards featuring adult film actresses, some of which bear the women's signatures. In determining the value of the magazine, the Court, with no evidence on this issue before it except the contradicting testimony of the two parties, finds that the magazine has a value of approximately $1300. Although Scott claimed the trading cards were worth almost $14,000, this claim is supported by neither documentary evidence nor Shorrock's testimony. Therefore, without any further evidence, the Court cannot find that the cards had any more than a de minimus value. Thus, the total value of the cash and personal property Scott transferred to Shorrock in January 2001 was $5300.
Furthermore, the Court finds both men's stories of their personal troubles-which collectively include divorce, death in the family, stock market losses, credit difficulties, and employment problems-to be credible accounts of their individual circumstances; in fact, the progression of Scott and Shorrock's relationship from friends to opposing parties in this litigation only serves to signify the sad trajectory of this case. In resolving the parties' rights, the Court notes both the amount of financial and emotional strain under which both Shorrock and Scott have struggled throughout this controversy and its concomitant influence on their respective actions.
 Analysis
Shorrock alleges that Scott has breached an oral contract by not fulfilling his obligation to repay the $19,454 loaned to him by Shorrock. As the parties both testified that they had orally agreed that Scott owed Shorrock $19,454 and that Scott would repay the debt by March 1, 2001, there is no question as to the existence of this oral contract. Rather, the issue in dispute is whether the parties agreed to an accord and satisfaction of their prior promise. *Page 8 
Black's Law Dictionary defines an accord and satisfaction as "an agreement to substitute for an existing debt some alternative form of discharging that debt, coupled with the actual discharge of the debt by the substituted performance." Black's Law Dictionary 17 (8th ed. 2004). The Court must interpret the words and acts of the parties in order to determine whether such an agreement has been made. Weaver v. AmericanPower Conversion, Corp., 863 A.2d 193, 198 (R.I. 2004) (citing 6 Corbin on Contracts § 1277 at 117 (1962)). In so interpreting, the Court undertakes the same analysis that it would in any other contractual matter. Id.
Under the tenets of contract law, a valid contract will be formed only if each party has the intent to be bound by the terms of the agreement.Rhode Island Five v. Medical Associates of Bristol County, Inc.,668 A.2d 1250, 1253 (R.I. 1996). Therefore, in order for Scott's cash payments and the transfer of personal property to be considered a satisfaction of his debt, "`[t]here must be accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise.'" Weaver,863 A.2d at 198 (quoting 6 Corbin on Contracts § 1277 at 118). Here, the Court is not persuaded that such an agreement was ever reached. Scott's testimony alone fails to sustain his burden of proof that the transfer of cash and personal property amounted to an accord and satisfaction. The Court, noting the lack of evidence concerning the value of the trading cards, has only awarded them a de minimus value. Therefore, the Court cannot accept Scott's testimony that Shorrock agreed to accept the transfer of the cards and the magazine, along with only $4,000 cash, to satisfy a debt of $19,454, especially considering Shorrock's explicit testimony to the contrary. Having found that the parties *Page 9 
did not agree to an accord and satisfaction, the Court finds that Scott has breached the oral contract to repay $19,454, and that Shorrock is entitled to damages for this breach.
However, in calculating the damages, the Court must address Scott's claim of unjust enrichment. Scott, having transferred $4000 in cash and a magazine worth approximately $1,300 to Shorrock, claims that Shorrock would be unjustly enriched if he is allowed to recover the entire amount on the loan, as well as keep the money and property previously given to him. The doctrine of unjust enrichment is an equitable one, and it is applied in cases where one party has received a benefit from another "and the retention thereof would be unjust under some legal principle recognized in equity." Rhode Island Hosp. Trust Co. v. Rhode IslandCovering Co., 96 R.I. 178, 179-80, 190 A.2d 219, 221 (R.I. 1963) (citingSeekins v. King, 66 R.I. 105, 110, 17 A.2d 879 (1941)). "Actions brought upon theories of unjust enrichment and quasi-contract are essentially the same." R B Electric Co. v. Amco Construction Co., 471 A.2d 1351,1355 (R.I. 1984). It is well settled that:
 "In order to recover under quasi-contract for unjust enrichment, a plaintiff is required to prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof." Anthony Corrado, Inc. v. Menard Co. Building Contractors, 589 A.2d 1201, 1201-02
(R.I. 1991) (citing R B Electric Co., 471 A.2d at 1355-56).
The Court finds that Scott has conferred a benefit of $5,300 in cash and personal property upon Shorrock, and that Scott intended it to be in partial repayment of the loan. The Court does not find Shorrock's testimony that the transfer of cash and property was made as part of a gift to be credible, and therefore finds that Shorrock accepted this cash and *Page 10 
property knowing that it was the first installment of Scott's repayment of the loan. Thus, it would be unjust for Shorrock to now recoup the full amount of the loan. The Court will therefore reduce Shorrock's recovery by the $5,300 he has already received from Scott.
In calculating damages, the Court must also address Shorrock's request to be awarded attorney's fees under G.L. 1956 § 9-1-45. This section provides for attorney's fees in cases where the Court finds "a complete absence of a justiciable issue of either law or fact raised by the losing party." Moreover, the Court can award attorney's fees "as a sanction for contumacious conduct." Moore v. Ballard, 914 A.2d 487, 489. Here, Scott's partially successful claim of unjust enrichment proves that he did raise a justiciable issue of fact and law in his defense of Shorrock's suit; furthermore, the Court does not find any sanctionable conduct on Scott's part. As a result, Shorrock's claim for attorney's fees is denied.
Before fully dispensing with the breach of contract claim, however, the Court must address Scott's defense of judicial estoppel. Scott argues that Shorrock is now estopped from arguing that the debt remained unpaid because he failed to disclose the allegedly outstanding loan as part of his assets in the divorce proceeding. The principle of judicial estoppel has been recognized by the Rhode Island Supreme Court as a way to "promot[e] truthfulness and fair dealing in court proceedings."D H Therapy Associates v. Murray, 821 A.2d 691, 693-94 (R.I. 2003). "[B]ecause the rule is intended to prevent `improper use of judicial machinery,' . . . judicial estoppel `is an equitable doctrine invoked by a court at its discretion.'" Id. (quoting New Hampshire v. Maine,532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed.2d. 968, 977-78 (2001)). In order to aid *Page 11 
the courts in their analysis, however, the United States Supreme Court has noted several factors that are relevant to this type of inquiry: whether the party's later position is "clearly inconsistent" with its earlier position; whether the party has succeeded in persuading a court to accept the earlier position; whether the party asserting the new position would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire,532 U.S. at 750-51, 121 S.Ct at 1815, 149 L.Ed.2d at 978.
Here, the Court cannot find that Shorrock should be judicially estopped from enforcing the oral contract between the two parties. The Court, recognizing the extraordinariness of this form of relief, does not apply estoppel "unless the equities clearly [are] balanced in favor of the part[y] seeking relief." Southex Exhibitions, Inc., v. RhodeIsland Builders Association, Inc., 279 F.3d 94, 104 (1st
Cir.2002 (applying Rhode Island law) (quoting Greenwich Bay Yacht BasicAssociates v. Brown, 537 A.2d 988, 991 (R.I. 1988)). Here, Scott has failed to offer any documentary evidence of the representations made during Shorrock's divorce proceeding, so the Court cannot find that the principle of judicial estoppel is an appropriate remedy in this case. Furthermore, Shorrock testified that he and his ex-wife had not only reached a fairly amicable agreement as to the division of the marital property, but that they had also come to agreements between themselves on some issues without the benefit of lawyers because it made financial sense. The Court finds Shorrock's account credible, which further supports its decision on this issue.
Having determined the extent of Scott's liability under the breach of contract claim, the Court must now examine Scott's counterclaim of fraud. In order for a party to *Page 12 
prevail on a claim of fraud, he or she must prove the following elements: (1) a false representation, (2) intent that the plaintiff rely on that representation, (3) justifiable reliance on the part of the plaintiff on the false representation, and (4) resultant damages.Zaino v. Zaino, 818 A.2d 630, 638 (R.I. 2003); Travers v. Spidell,682 A.2d 471, 472-73 (R.I. 1996). Here, Scott cannot meet these requisite elements, for he has failed to provide convincing evidence that Shorrock ever made a false representation. Although Scott claims that Shorrock said that the debt would be paid in full upon the transfer of $4,000, the Playboy magazine, and the trading cards, the Court does not find it credible that Shorrock would agree to such an arrangement when there has been no evidence that the property itself was worth $16,000. Therefore, the Court does not find Scott's claim to be credible in this regard, and he therefore fails to establish a prima facie case of fraud.
 Conclusion
Based on the foregoing findings and analysis of the evidence before it, the Court concludes that Shorrock has carried his burden of proof in showing that Scott breached the oral contract between the two parties. Furthermore, the Court finds that Scott has failed to prove either his claim of fraud or his defense of judicial estoppel by a preponderance of the evidence. However, the Court does find that under the theory of unjust enrichment, Scott is entitled to offset the damages he owes to Shorrock by the value of the property he has already given him.
Judgment in this action shall enter in favor of Shorrock, the plaintiff. Shorrock is entitled to damages in the amount of $14,154, because his original claim of $19,454 has been reduced by $5300 under the doctrine of unjust enrichment.
Counsel shall prepare an appropriate order for entry.