DECISION
This case involves a dispute over who should pay for a roadway that was partially constructed on a previously undeveloped parcel of property in Scituate, Rhode Island, and otherwise known as Tax Assessor's Plat No. 48-1, Lot 118 (the property). The Plaintiff, Adler Brothers Construction, Inc. (Adler), filed a breach of contract action against real estate developer David M. Devany (Devany) and his wife Lois A. Devany. In the same complaint, Adler filed an unjust enrichment claim against Earl H. Colvin (Earl) and his wife Lillian G. Colvin (the Colvins). A five-day non-jury trial was conducted in the Superior Court, and the Court will now issue its Decision. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I Facts and Travel
On March 11, 1998, the Colvins entered into a listing agreement for the property with real estate agent Joseph Parenti, who was acting on behalf of the brokerage firm J.W. Riker. On the same day, Devany's corporation, Dalo Associates, Inc. (Dalo), signed a purchase and sales agreement (P S) for the property in the amount of $105,000. Thereafter, on March 17, 1998, Devany signed an Indemnification Agreement in his capacity as President of Dalo, whereby Dalo *Page 2 
would hold harmless and indemnify the Colvins for any claims which may arise as a result of proposed surveying, testing and/or excavation work on the property. On March 19, 1998, the Colvins ratified the P S.
The P S contained certain conditions, one of which was that the sale was subject to the approval of an eight or nine lot subdivision of the property.[1] Dalo was required to exercise due diligence, and the closing was scheduled to occur within thirty days of obtaining subdivision approval.
On January 19, 1999, the Scituate Planning Commission (the Commission) voted to approve a proposed subdivision master plan for the property. Final approval was subject to certain conditions, one of which required Devany to obtain an easement to clear brush from property owned by an objecting neighbor, Cecile Davidowicz (Davidowicz). Lengthy negotiations between Devany and Davidowicz ensued.
On March 8, 1999, Adler gave Devany a quote for $196,967 to clear land and perform roadwork on the property. It later reduced the price to $169,835 on March 31, 1999. Adler was aware that Devany did not own the property, but that he had signed a P S on behalf of Bethel Corporation (Bethel). Thereafter, on April 17, 1999, Devany entered into another Indemnification Agreement with the Colvins, this time on behalf of Bethel. However, Bethel was not incorporated until April 21, 1999. In the Indemnification Agreement, the Colvins agreed to allow Bethel "to go upon said property and perform certain road building and associated land development work."[2] *Page 3 
Sometime in May, 1999, the Colvins entered into a second P S with Devany, this time in his capacity as President of Bethel. The sale still was subject to the acquisition of subdivision approval, with the closing still to be scheduled within thirty days of receiving final approval. The purchase price had been increased to $137,000 and the parties expressly incorporated the April 17, 1999 Indemnification Agreement into the P S.
On April 28, 1999, Adler commenced construction on the property, and continued through June 11, 1999.[3] Adler removed and buried trees and boulders, and began laying a roadway of approximately nineteen-hundred-feet in length. When Devany encountered difficulties in obtaining an easement from Davidowicz, he told Adler to discontinue the construction project before completion. On December 31, 1999, Adler submitted an invoice to Devany in the amount of $75,000. To date, Adler has not been paid for the any of the work that it performed for Bethel.
On February 5, 2000, the Colvins informed Devany, through Parenti, that they wanted to close the sale pursuant to a previous, unwritten November 15, 1999 deadline. Thereafter, the Colvins put pressure on Devany to close the deal. On February 29, 2000, Parenti wrote in his notes that:
 "I explained to Earl [Colvin] that the closing date was open ended and that upon drafting of the second agreement I urged Earl to put a specific date but that Earl said that he had nothing to lose with the roadwork to be done, a gain to him, and that he wanted to keep the closing as per the first agreement. . . ." Exhibit 36 Parenti's notes, dated February 29, 2000.
On May 3, 2000, the Colvins and Bethel entered into yet another P S, this time in the amount of $170,000. The P S did not specify a closing date. On June 19, 2000 the parties amended the *Page 4 
P S to include a closing date of July 21, 2000, with time being of the essence. On July 5, 2000, the Colvins agreed to extend the closing date to September 30, 2000, again with time being of the essence.
On August 1, 2000, Adler sent another $75,000 invoice to Devany. Meanwhile, according to Devany, he was still attempting to resolve the easement issue with neighbor Davidowicz. Towards the end of September, Devany indicated that he and Davidowicz had reached an agreement, and that he needed a few extra days to firm up financing. However, the Colvins refused to extend the September 30, 2000 deadline. On October 1, 2000, Devany executed a release on behalf of Bethel Corporation. Meanwhile, the Rhode Island Secretary of State had issued a notice of revocation of its corporate status to Bethel for failure to file an annual report. On November 30, 2000, the Rhode Island Secretary of State mailed a Certificate of Revocation to Bethel for failure to file an annual report.
On October 6, 2000, Adler filed a notice of intention to file a mechanic's lien. Meanwhile, Parenti attempted to solicit third-party bids for the property on behalf of the Colvins. The Colvins rejected several offers for the parcel: one from Meehan Builders, Inc., in the amount of $288,000; another from Harrow, LLC, for $295,000; another from Robert F. Tasca, Jr. (Tasca), for $250,000. The Colvins also rejected an offer from Adler to purchase the property for $255,000, with the agreement that it would be willing to waive all of its claims for compensation for the construction work that it already had performed on the lot.
On October 23, 2000, the Colvins entered into a P S with Annese Construction Co., Inc. (Annese) in the amount of $300,000. Annese also intended to subdivide and develop the property. Thereafter, Tasca offered Annese $290,000 to construct a home on one of the property's parcels. The Colvins never sold the property to Annese, however, because it was *Page 5 
unable to obtain necessary permits. Consequently, on March 19, 2001, the Colvins, Parenti, and Annese executed a release.
On April 2, 2001, the Colvins entered into a P S with Tasca in the amount of $315,000. On April 25, 2001, the Colvins transferred the warranty deed to Tasca. Thereafter, Tasca constructed a single-family residence on the property that utilizes all but seventy feet of the roadway that Adler sub-graded. Tasca later obtained approval to subdivide the property into two lots.
On April 8, 2003, Adler filed the instant action against the Colvins and Devany.[4] It alleged breach of contract (Count I), book account (Count II), successor liability against Devany and/or Bethel (Count III), and piercing of Bethel's corporate veil (Count IV). Adler further alleged breach of an implied contract and/or quasi contract and quantum meruit against the Colvins (Count V).[5] Adler sought to hold the Devanys and the Colvins jointly and/or severally liable. It also sought interest and attorney's fees.
In response, the Colvins filed a counterclaim against Adler for trespass, conversion, and fraud/slander of title. Additionally, they filed a cross-claim against Devany, asserting that he was personally liable to indemnify the Colvins because, they maintained, Devany neither capitalized Bethel nor followed requisite corporate formalities. Devany later filed a motion for summary judgment asserting that the October 1, 2000 release that the parties signed served to release not only Bethel, but also Devany in his personal capacity, from any obligations that they may have had towards Adler. On June 1, 2004, a Motion Justice of this Court ruled that the *Page 6 
release only applied to Bethel because there was no consideration between the Colvins and Devany in his personal capacity.
Thereafter, the Court conducted a five-day non-jury trial. The Colvins and Adler later submitted post-trial memoranda. The Court now will render a decision.
 II Standard of Review
Rule 52 of the Rhode Island Superior Court Rules of Civil Procedure governs non-jury trials, and provides that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . ." R.I. Sup. Ct. R. Civ. P. Rule 52(a). As a result, "[t]he trial justice sits as a trier of fact as well as of law." Parella v. Montalbano, 899 A.2d 1226,1239 (R.I. 2006) (quoting Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984)). Furthermore, "[t]he task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." Id. In making such determinations, the trial justice "weighs and considers the evidence, passes upon the credibility of the witnesses, and draws proper inferences" from the witness testimony.Id.
Further, it is well-settled that a trial justice's decision in a non-jury trial need not involve an "extensive analysis and discussion of all the evidence. Even brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." Parella, 899 A.2d at 1239 (quoting Donnelly v. Cowsill,716 A.2d 742, 747 (R.I. 1998)). Accordingly, the Rhode Island Supreme Court has "never demanded that a trial justice make findings with respect to every witness or issue in which `a full understanding of the issues' and the conclusions of the fact finder `may be reached without the aid of separate findings.'" Id. *Page 7 
 Analysis
In their post-trial memorandum, the Colvins maintain that because Devany signed the Indemnification Agreement before Bethel was incorporated, Devany should be personally liable for any potential judgment against them. They further contend that Adler is not entitled to an equitable remedy because it has an adequate remedy at law; namely, its breach of contract action against Devany. They also assert that Adler could only recover from the Colvins under the mechanics' lien statute. The Colvins next aver that the measure of damages for unjust enrichment is a defendant's gain rather than a plaintiff's loss, and that Adler failed to prove that any increase in value was attributable to the its work rather than to normal appreciation. Finally, the Colvins maintain that Adler is precluded from recovering under a theory of unjust enrichment because it performed the work with full knowledge that contractor Devany did not own the property.
In response, Adler contends that while the mechanics lien law may have provided it with a remedy against the Colvins, it does not constitute Adler's exclusive remedy. It further maintains that it is entitled to equitable relief because it met its burden of proving that the Colvins had been unjustly enriched. Adler then asserts that it presented several distinct methods for the Court to determine Adler's measure of damages. Adler also disputes Devany's characterization at trial that the contract between Adler and Bethel was contingent upon Bethel's obtaining subdivision approval.[6] *Page 8 
 A. Unjust Enrichment and Quasi-Contract
Before addressing the various contentions raised by the parties, the Court first will set out the law governing the overlapping equitable principles of unjust enrichment and quasi-contracts. Unjust enrichment "is not simply a remedy in contract and tort but can stand alone as a cause of action in its own right." Dellagrotta v. Dellagrotta,873 A.2d 101, 113 (R.I. 2005).[7] Recovery under the theory of "unjust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them."Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 99 (R.I. 2006) (citingR B Electric Co. v. Amco Construction Co., 471 A.2d 1351, 1355 (R.I. 1984)). In addition, "actions brought upon theories of unjust enrichment and quasi-contract are essentially the same." Bouchard v. Price,694 A.2d 670, 673 (R.I. 1997) (quoting R B Electric Co.,471 A.2d at 1355).
In order to determine what comprises "a just or unjust result requires a trial justice to examine the facts of the particular case and balance the equities." Id. at 115 (citing R B Electric Co., 471 A.2d at 1356). In recovering under claims of unjust enrichment or quasi-contract:
 "a plaintiff is required to prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof." Narragansett Elec. Co., 898 A.2d at 99 (quoting Bouchard v. Price, 694 A.2d 670, 673 (R.I. 1997)); see *Page 9 also Fondedile, S.A. v. C.E. Maguire, Inc., 610 A.2d 87, 97 (R.I. 1992) (discussing almost identical elements in a quasi-contract context).
The Rhode Island Supreme Court has held that "a benefit is conferred when improvements are made to property, materials are furnished, or services are rendered without payment." Narragansett Elec. Co.,898 A.2d at 99.
In the instant matter, the Colvins gave Bethel permission to begin roadway construction on their property provided that it sign an Indemnification Agreement. In reliance upon this permission, and with confidence that Bethel would timely obtain the necessary subdivision permits, Bethel contracted with Adler to remove and bury trees and boulders, and to partially construct a nineteen-hundred-foot long roadway on the Colvin's property. All but seventy feet of the same roadway later was improved and utilized by Tasca in the construction of a single-family home on the property. The Court finds that at a minimum, a partially constructed roadway improved the property, and thereby constituted a benefit to the Colvins. Furthermore, it is undisputed that Adler has not received payment for its services. As noted, services rendered without payment also constituted a benefit to the Colvins.See Narragansett Elec. Co., 898 A.2d at 99. Consequently, Adler satisfied the first element of the three-part test. The next issue is whether there was an appreciation of the benefit by the Colvins.
Earl Colvin testified at trial. The Court finds him to be an intelligent, articulate, very clever individual with sharp business sense. He is a detail man. The Court does not find credible his testimony asserting that he was unaware of the construction work on the property. In the April 17, 1999 Indemnification Agreement, the Colvins expressly permitted Bethel to perform roadwork on the property. Adler subsequently commenced working on the property without any objection either directly from the Colvins, or through Parenti, their agent. Indeed, Parenti *Page 10 
credibly testified that Earl was aware that roadwork was being performed on the property, and Parenti's February 29, 2000 notes indicate that Earl viewed the construction as a "no lose situation": either he closes the deal, or he gains from the roadwork. In addition, Adler's notice to file a mechanics' lien put the Colvins on notice that work had been performed on the property.
Devany also testified about the events surrounding his failure to purchase the property. The Court finds his testimony to be more credible than Earl's. It further finds that in general, Devany was a very good witness whose version of events was far more convincing than Earl's. Devany credibly testified that Earl knew about both the roadwork and that Devany was close to an agreement with Davidowicz concerning the easement issue. However, the Colvins refused to extend the September 30, 2000 closing deadline. Once the deal fell through, Earl immediately began to seek higher bids for the property. In light of the foregoing, the Court finds that the Colvins appreciated the benefit of Adler's roadwork; consequently, Adler satisfies its burden of demonstrating the second element of unjust enrichment and/or of a quasi-contract test. The Court now must consider whether the Colvins accepted the benefit of Adler's work such that it would be inequitable for them to retain the benefit of that work without paying for its value.
The Court has found that Earl was aware of Adler's roadwork, and that the Colvins financially benefited from that work when they sold the property. Real estate appraiser Sweeney testified on behalf of Adler. He was an excellent and credible witness who opined that the property's increase in value to over $300,000 was directly attributable to the roadwork performed by Adler. The fact that the Colvins were willing to accept $170,000 for the property in July, 2000, and some three months later held out for an offer of $300,000 would support an inference that the Colvins realized that the partially constructed roadway had increased the value of their property substantially. *Page 11 
This conclusion is further bolstered by the Colvins' own actions. The Colvins and Bethel had agreed to close on the property on September 30, 2000, with time being of the essence. The purchase price was for $170,000. At that point in time, Bethel owed Adler $75,000 for the partially constructed roadway. Twenty-three days after the sale fell through, the Colvins signed a P S with Annese in the amount of $300,000. See P S, dated October 23, 2000. At the time, the Colvins were aware that Adler had not been paid for the construction because they had turned down an offer from Adler for $255,000, coupled with an agreement to waive any and all claims for its unpaid work. In view of the foregoing, the Court concludes that the Colvins were unjustly enriched and it would be inequitable for them to retain the benefit of Adler's work without paying for its value. The Court next must consider the amount of damages that Adler has suffered.
 B. Value of the Work Performed
The Colvins maintain that the proper measure of damages for unjust enrichment is a defendant's gain rather than a plaintiff's loss, and they rely upon Doe v. Burkland 808 A.2d 1090, 1095 (R.I. 2002) to support this contention. They then assert that even if the Court finds against them on the unjust enrichment claim, Adler has not proven its damages because there is no evidence concerning the value of the property before and after the improvements, and no evidence that any alleged increase in value was solely attributable to Adler's work rather than normal appreciation.
Contrary to the Colvins' assertion, the proper measure of damages for an unjust enrichment claim is "the fair and reasonable value of the work done." ADP Marshall, Inc. v. Brown University, 784 A.2d 309, 312 (R.I. 2001) (citing Iannuccillo v. Material Sand and Stone *Page 12 Corp., 713 A.2d 1234, 1240 (R.I. 1998)). Such a measure is appropriate in situations "where there was no agreement between the parties but a benefit was conferred on the owner." ADP Marshall, Inc.,784 A.2d at 312.
Adler contends its damages amount to approximately $109,000 to $110,000, and relies upon testimony from real estate developer David Annese to support this contention. Mr. Annese testified that it would cost approximately $60,000 to complete the roadwork. Adler subtracted this cost from the contract price of $169,835 to reach a balance of $109,835 — the damages it alleges that it suffered. The Colvins counter that because Adler was willing to pay $255,000 and waive its claim for work already performed, the maximum it should be entitled to recover is $60,000, i.e., the difference between the price Adler was willing to pay and the $315,000 that Tasca actually did pay.
The Court finds that Mr. Annese's calculation does not account for any profits that Adler would have added to its $60,000 cost. Such profits also would have to be subtracted from the contract price in order to calculate a more realistic assessment of damages. Consequently, the Court finds Mr. Annese's calculation of damages to be inaccurate.
The Court concludes that Devany was acting under a good faith belief that the sale would be consummated when he contracted with Adler to perform roadwork on the property. Adler, although cognizant of the fact that Bethel did not own the land, reasonably could have relied upon Devany's belief that the property would be sold to Bethel. As Devany's subcontractor, the Court concludes that Adler is entitled to personal judgment from the Colvins for damages as a result of their unjust enrichment. See R B Elec. Co., Inc., 471 A.2d at 1355.
It is undisputed that the Colvins received a substantially higher price from Tasca than it would have received from Adler. It also is undisputed that Adler performed roadwork on the *Page 13 
property. Although the roadwork may have been responsible for the entire appreciation in the value of the property, such increase does not accurately reflect the damages actually incurred by Adler. Adler charged Devany $75,000 for the work that it performed. Presumably, this sum represented Adler's belief of the worth of its services. Consequently, the Court finds that the fairest and most accurate assessment of the value of Adler's work is the amount that it actually charged Devany. The Court accordingly concludes that Adler's damages on the unjust enrichment claim amounts to $75,000, plus interest.
 C. Piercing the Corporate Veil
Adler asserts that Bethel is the alter ego of Devany, and seeks the Court to pierce Bethel's corporate veil. It is undisputed that Bethel was incorporated on April 21, 1999, and that its charter was revoked on November 20, 2000. It further is undisputed that Bethel has not paid Adler the amount that it owes; thus, constituting a breach of contract.
It is axiomatic that "[t]he standards for piercing the corporate veil vary with the circumstances." Miller v. Dixon Industries Corp.,513 A.2d 597, 604 (R.I. 1986). Corporate entities "should be disregarded and treated as an association of persons only when the facts of a particular case render it unjust and inequitable to consider the subject corporation a separate entity." R B Elec. Co., Inc., 471 A.2d at 1354. Such a remedy is available "when the corporate entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime. . . ." Id. (internal quotations omitted). A corporate veil should not be pierced absent the existence of an injustice. See id. Furthermore, in Rhode Island, there is "a reluctance to pierce the corporate veil in order to establish responsibility in respect either to officers or to parent *Page 14 
corporations in cases involving both tort and contract liability."Banks v. Bowen's Landing Corp., 652 A.2d 461, 464 (R.I. 1995).
In the present case, it has not been alleged, much less proven, that Devany attempted to perpetrate a fraud when he incorporated Bethel. Furthermore, there is no evidence that an injustice would result unless Bethel's corporate identity was disregarded. Indeed, the reverse may be true: were the Court to disregard Bethel's corporate identity and hold Devany personally liable for Bethel's breach of contract, Devany would be responsible to pay the amount for which the Colvins were unjustly enriched. Consequently, the Court declines the invitation to pierce Bethel's corporate veil.
 D. Indemnification.
The Colvins next contend that even if the Court finds unjust enrichment, the Indemnification Agreement relieves them of any liability. Furthermore, according to the Colvins, Devany signed the agreement in his personal capacity because he neither capitalized Bethel, nor attended to its requisite corporate formalities. The Court rejects the latter contention.
The well-established "rule holds that a preincorporation contract may be adopted, accepted, or ratified by a corporation when properly organized, resulting in corporate liability on the contract." Katz v.Prete, 459 A.2d 81, 86 (R.I. 1983). In this case, although Devany signed the Indemnification Agreement before Bethel was incorporated, he signed the P S on Bethel's behalf after its incorporation. That P S expressly incorporated the Indemnification Agreement by reference. Therefore, the Court finds that at a minimum, Bethel impliedly adopted, accepted, and ratified the Indemnification Agreement. Accordingly, the Court concludes that the *Page 15 
Indemnification Agreement applied only to Bethel, and that Devany did not sign the agreement in his personal capacity.
In Rhode Island, "[i]n order to successfully assert an action for indemnity, the prospective indemnitee must prove three elements."Muldowney v. Weatherking Products, Inc., 509 A.2d 441, 443 (R.I. 1986). To begin with, "the party seeking indemnity must be liable to a third party." Id. Next, "the prospective indemnitor must also be liable to the third party." Id. Finally, "as between the prospective indemnitee and indemnitor, the obligation ought to be discharged by the indemnitor."Id.
Indemnification "arises out of a contract which may be express or may be implied in law to prevent a result which is regarded as unjust or unsatisfactory. . . ." Rosado v. Proctor Schwartz, Inc., 66 N.Y.2d 21,24 (N.Y. 1985) (internal citation and quotations omitted); see also Inre Poling Transp. Corp., 784 F. Supp. 1045, 1047-1048 (D.N.Y. 1992) ("In indemnification, which arises out of an express or implied contract, the party held legally liable shifts the entire loss to another to prevent a result which is regarded as unjust or unsatisfactory.") (internal quotation omitted).
Implied indemnification is a "restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." Mas v. Two BridgesAssoc., 75 N.Y.2d 680, 690 (N.Y. 1990). Thus, it "finds its roots in the principles of equity." McDermott v. New York, 50 N.Y.2d 211, 217 (N.Y. 1980). However, "[w]hen a party makes improvements or confers a benefit upon the land of another with full knowledge that title is vested in another, or subject to dispute, the improver will not be entitled to restitution under the equitable doctrine of unjust enrichment."Eastern Motor Inns, Inc. v. Ricci, 565 A.2d 1265, 1272 (R.I. 1989). An exception to this general rule occurs when "[a]n improver *Page 16 
has acted in good faith where he or she has made improvements to land in the belief that he or she had the right to purchase the property based on previous conduct between him and the owner." 41 Am. Jur. 2d.Improvements § 9 (2005). Furthermore,
 "[a]s a general rule of law, apart from unjust enrichment . . . a subcontractor who has furnished labor or materials for the construction or repair of some form of improvement on the lands of another has no right to a personal judgment against the landowner where there is no contractual relationship between them." R B Elec. Co., Inc., 471 A.2d at 1355 (emphasis in the original).
The Colvins assert that the Indemnification Agreement releases them from financial liability; however, the indemnification agreement runs from Bethel to the Colvins. Considering that Bethel no longer exists, and the Court has declined the Colvin's invitation to pierce the corporate veil, the issue of indemnification is moot. Consequently, the Court concludes that the Colvins are liable for the payment of Adler's damages, plus interest. In light of this conclusion, the Court denies and dismisses Count II (book account) and Count III (successor liability) of the complaint.
 Conclusion
For the foregoing reasons, the Court finds in favor of Adler against Bethel on Count I (breach of contract) and against the Colvins on Count V (unjust enrichment/quasi-contract) of the complaint. Count II (book account) and Count III (successor liability), and Count IV (piercing the corporate veil) of the complaint are denied and dismissed. The Colvins' counterclaims against Adler, and their cross-claim against Devany, also are denied and dismissed. Devany's Rule 52 motion to dismiss is granted. Adler's damages amount to $75,000, *Page 17 
plus interest, but its request for attorney's fees is denied because Adler has not satisfied the requirements of G.L. 1956 § 9-1-45.[8]
Counsel shall submit an appropriate order consistent with this decision.
[1] If nine lots were approved, the purchase price would be increased to $110,000.
[2] The Indemnification Agreement between the Colvins and Bethel provided:
 "NOW THEREFORE, Bethel Corp. agrees to be primarily responsible for any and all claims which may arise relative to certain road building and associated land development work performed by Bethel on the property known as Assessor's Plat 48, Lot 118 Scituate[,] RI, and further agrees to hold Earl and Lillian G. Colvin harmless and to indemnify them from any and all claims which may be made against them relative to the aforementioned road building and associated land development work as owners of the property."
[3] Adler also performed some work on the property on January 3, 2000, and on July 6, 2000.
[4] Lois Devany later was added as a party-defendant.
[5] As there was no evidence that Lois Devany participated in any pertinent transactions, the Court granted a R.I. Sup. Ct. R. Civ. P. Rule 52(c) motion to dismiss in favor of Lois Devany. See R.I. Sup.Ct. R. Civ. P. Rule 52(c) (stating that "the court, on motion or on its own initiative, may order the action dismissed without prejudice on such terms and conditions as are just"). The Court reserved ruling on a similar motion made on behalf of David Devany.
[6] Devany failed to produce evidence to support this blanket contention; consequently, the Court rejects Devany's allegation that the contract between Bethel and Adler was contingent. It is highly unlikely that Adler would have invested so much of its own resources and labor into constructing the roadway on a contingency basis only.
[7] Because unjust enrichment "can stand alone as a cause of action in its own right" (Dellagrotta v. Dellagrotta, 873 A.2d 101, 113 (R.I. 2005)), Adler is not restricted to the Mechanics' Lien Act as its only remedy against the Colvins. See also G.L. 1956 § 34-28-33 ("Except as otherwise specified, nothing in this chapter shall be construed to limit the right of any person, whether he or she have a valid lien hereunder or not, to remedies otherwise available to him or her under law. . . .")
[8] Section 9-1-45 of the Rhode Island General Laws provides:
 "The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court:
 (1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or
 (2) Renders a default judgment against the losing party." *Page 1